### GEORGE STEFFAN v. H. B. MEISELMAN.

(Filed 19 May, 1943.)

**1. Negligence § 19a—**

> In an action by plaintiff against defendant to recover compensatory and punitive damages to a restaurant business conducted by plaintiff on the ground floor of defendant's building, where the evidence of plaintiff tended to show that defendant allowed his toilet, immediately above plaintiff's restaurant, to leak so badly that plaintiff's fixtures were damaged, his food and business were ruined, defendant over a period of months, knowingly and deliberately, allowing the defective toilet to become worse and intentionally refusing to remedy same, a motion for judgment of nonsuit was properly denied.

**2. Landlord and Tenant § 11—**

> A landlord is liable in damages to his tenant, as well as to others, for his negligent or malicious use of his own property and the instrumentalities thereupon under his control; and such liability is in no wise affected

or alleviated by the rule that a landlord is not liable for damages occasioned by the conditions of the demised premises or by his failure to repair the same.

### 3. Damages §§ 2, 6, 7—

In tort actions, the act being malicious or accompanied by gross negligence, recovery of profits or damages for their loss are allowable, where they are ascertainable with a fair degree of certainty; since, unlike a case arising out of contract, it is not a question whether the consequences were within the legal contemplation of the parties, the question is whether the consequences were the natural and probable result of the wrongful act.

APPEAL by plaintiff from *Armstrong, J.,* at November Term, 1942, of GUILFORD.

This action was brought to recover damages for the alleged negligence or tort of the defendant in permitting or causing contaminated water to pass from a toilet under his control in an upstairs room owned and occupied by him into the leased premises of the plaintiff underneath, in which the latter operated a restaurant, making the same unfit for occupancy and injuring his business. The case originated in High Point municipal court, where the plaintiff made a recovery, and came to the Superior Court by appeal on matters of law. It is here on appeal from that court for error in sustaining certain exceptions taken by the defendant on the trial in the municipal court.

Some time about 10 October, 1940, the plaintiff leased from the defendant a room on the ground floor of a building owned by defendant, and refitted and furnished it, and began the operation of a restaurant therein and carried on the business until 28 June, 1942.

The defendant operated a theatre in the building, and in connection with it maintained a public toilet on the second floor over plaintiff's restaurant for the convenience of patrons, which was generally accessible to visitors to the theatre, and used by defendant's servants and employees.

A short time after plaintiff occupied the building, the water from the defendant's toilet began leaking through the ceiling of the restaurant in the vicinity of the cooking outfit and places where food was kept, in a manner visible to customers of the plaintiff and causing the ceiling to be soaked and to fall down. The plaintiff notified defendant, who declined to do anything about it, telling plaintiff that if he did not like the place, he could move out and defendant could rent it for $100 a month. The water continued to leak through, damaging plaintiff's fixtures and place of business, and defendant repeatedly declined to have the trouble removed. Instead, says the plaintiff, he demanded that plaintiff pay him more money for occupation of the place, and threatened to put him out if he did not do so, and to give him more trouble than he ever saw, and perhaps lock up the place. The water, plaintiff testified, came in

"all over everything," and, on investigation, he found that it came from the defendant's toilet. He complained to defendant frequently, and defendant told him to move out because he did not want the cafe there and intended to give him trouble.

Some time in September, while there were from five to ten customers in the cafe, water began to come in quantities from the toilet down through the ceiling, over the wiener stand and cook stove and food, and the customers walked out. Plaintiff asked the theatre janitor to tell Mr. Meiselman because plaintiff could not get at him. He was locked up in the theatre and did not answer the telephone, over which plaintiff called as many as six times. Finally plaintiff called the police. Meiselman opened the door to them, and going up to the closet, they found water all over the floor. They found no one inside the theatre but Meiselman. He called a colored boy and told him to clean the place. The business was closed up that night, and remained so some time for repairs.

Plaintiff fixed the ceiling back and resumed operation of the cafe, but testified that his customers did not come back, and the business steadily dropped off until he was compelled to close. He exhibited a statement tending to show a profit for the first period of occupancy and a loss during the latter period, and stated it showed no profit after his customers stopped patronizing him because of conditions in the restaurant.

Plaintiff testified that the furniture, fixtures, and everything upon which the water fell were damaged. "The water damaged everything. It damaged everything we had in the place." He gave a detailed statement of things damaged, including food of various kinds. It damaged the fixtures, he testified, so that people would not come to eat.

Paul Manos corroborated the plaintiff as to the extent and cause of damage. He stated that the water was leaking off and on all the time, and the ceiling was dropping. He spoke to Mr. Meiselman, who never did anything about it. It came from the ladies' toilet, which was exactly over the cooking outfit.

On 17 September the water began running down, and witness sent someone to inform Meiselman. When he returned "everything was ruined. The water was coming down like a dam. The whole ceiling pulled out and fell down, and water was running over everything we had there—steamer, grill, cooking, steam table—everything." The witness testified his messenger could not get in to see Meiselman because the theatre door was locked, and he sent for the police. Meiselman opened for them. The water on the light fixtures and connections started a fire, which witness stopped by pulling the switches. Witness testified as to the damage done. He testified also as to the damage done the food—it smelled bad, customers wouldn't eat it, and it was thrown away.

He testified that there were about ten customers in the place at the time. None of them ever came back, although witness had seen them passing by. They never came back after they found out the toilets were upstairs.

The defendant introduced evidence in contradiction of the material facts testified to by plaintiff's witnesses. He further introduced the lease between Meiselman and Steffan, showing that Meiselman had made no agreement to repair the demised premises, or to be responsible for any repairs thereto, but the parties had expressly agreed to the contrary.

The plaintiff recovered in the municipal court and defendant, having made numerous exceptions covering the main features of the trial, appealed to the Superior Court, assigning errors in law. In that court many of the defendant's exceptions taken at the trial were sustained, and plaintiff appealed to this Court, assigning error in sustaining these exceptions.

*Walser & Wright, C. A. York, and Blackwell & Blackwell for plaintiff, appellant.*

*Silas B. Casey, W. Louis Ellis, Jr., and J. Allen Austin for defendant, appellee.*

SEAWELL, J. In the trial court plaintiff sought recovery of compensatory and punitive damages for injury to his properties and business, which he alleges was caused by the gross negligence or willful or malicious conduct of defendant. The defendant was unsuccessful in his motion for nonsuit in the trial court and in his objection to the issue relating to punitive damage, which latter was made upon the ground that there was no evidence justifying submission of such an issue. His exceptions on both points were sustained by the judgment now under review, the effect of which would be to dismiss the action in the municipal court when remanded to it.

In both these respects there was error in the ruling of the Superior Court sustaining defendant's exceptions. Without recapitulating the evidence or emphasizing its significance, it is sufficient to say that, taken in its most favorable light for the plaintiff, it was sufficient to justify the recovery of compensatory damages, and furnished reasonable inferences that the injury of which plaintiff complains was caused by the gross negligence or malicious wrongdoing of the defendant.

In the argument here addressed to the question of nonsuit, and we assume in the hearing below, counsel for the defendant relied strongly on *Leavitt v. Rental Co.,* 222 N. C., 81, and cited cases, which follows the rule adopted in *Fields v. Ogburn,* 178 N. C., 407, 100 S. E., 583; *Duffy v. Hartsfield,* 180 N. C., 151, 104 S. E., 139, and similar cases between

landlord and tenant, all of which relate to *repairs on the demised premises* or conditions thereupon for which it was sought to hold the owner or landlord liable. That situation does not obtain here. Steffan did not rent that portion of the building containing the toilet and had no control of it—on the contrary, it was occupied and was under the control of the defendant. The gravamen of plaintiff's case is injury inflicted upon him by the defendant in the negligent or malicious use of his own property and the *instrumentalities thereupon under his control.* Defendant's liability, arising from such a source, would not be affected or alleviated by the rental contract in evidence.

The evidence of plaintiff without doubt entitles him to go to the jury on the question of damage to his premises and property. The question has been raised whether it is not too speculative for consideration with respect to damages for injury to the business.

There should be no difficulty in concluding that the evidence was sufficient, if believed, to establish the fact of substantial injury to his business, free from any speculation. There was evidence to the effect that the wrongful conduct of the defendant rendered his premises—used as an eating place—unsanitary and unclean in such a way as to bring these conditions to the notice of customers. The ceiling bulged and began dropping away on account of the seepings and drippings from the water closet over the cooking outfit and place where food was kept; and the evidence discloses that the customers found out where the drippings came from and quit coming. Some time in September, when the water came down in quantities, there were as many as ten regular customers, if the evidence is to be believed, in the restaurant, all of whom walked out and did not come back any more. It is difficult to conceive of a condition more calculated to destroy a business of the kind carried on by plaintiff, and the evidence is reasonably direct that it did so.

But conceding this, it is incumbent on one who seeks to recover for injury to his business to bring to the jury evidence from which, with a reasonable degree of certainty, they may assess the damage without resort to elements that are purely speculative. *Juries may not award speculative damages.* The plaintiff has attempted to carry the burden by showing a loss of profit in later periods after the trouble began as compared with earlier periods when these unsanitary conditions did not exist, and during which the evidence discloses that he had built up a good business and was enjoying a profit. In discussing the legal principle involved, we think it of no great consequence whether it is sought to recover profits, as such, or simply to show the extent of the injury and the damage inflicted.

Ordinarily, at least in matters arising out of contract, loss of expected profits upon interruption or destruction of a business is too remote or

speculative to sustain a judgment for their recovery. *Machine Co. v. Tobacco Co.,* 141 N. C., 284, 53 S. E., 885; *Lumber Co. v. Power Co.,* 206 N. C., 515, 174 S. E., 427. But the rule is different where the act that occasioned the loss is malicious, since it is not a question in a tort case whether the consequences were within the legal contemplation of the parties—the question is whether the consequences were the natural and probable result of the wrongful act. Recovery of profits or damages for their loss on this principle has frequently been allowed where they are ascertainable with a fair degree of certainty. *DePalmer v. Weinman,* 15 N. Mex., 68, 103 P., 782; *Castner v. Beacon,* 114 Conn., 190, 188 A., 214, 81 A. L. R., 97; *Jackson v. Stanfield,* 137 Ind., 592, 36 N. E., 345; *Kentucky Heating Co. v. Hood,* 133 Ky., 383, 118 S. W., 337. This distinction is pointed out clearly in an extensive discussion of the principle in *Johnson v. R. R.,* 140 N. C., 574, 53 S. E., 362, *per Connor, J.* There, the rule as laid down by *Judge Christiancy* in *Allison v. Chandler,* 11 Mich., 561, is approved:

"But whatever may be the rule in actions upon contract, we think a more liberal rule, in regard to profits lost, should prevail in actions purely of tort (excepting, perhaps, the action of trover). . . . But generally, in an action purely of tort, when the amount of profits lost by the injury can be shown with reasonable certainty, we think they are not only admissible in evidence, but that they constitute, thus far, a safe measure of damages."

The opinion further cites Sutherland, Vol. 1, sec. 70: "If a regular and established business is wrongfully interrupted, the damage thereto can be shown by proving the usual profits for a reasonable time anterior to the wrong complained of."

It was held in *Jackson v. Stanfield, supra,* that evidence is admissible showing anticipated profits, not remote or speculative, not as the measure of damages, but to aid the jury in estimating the extent of the injury sustained. This principle also is approved in *Johnson v. R. R., supra.*

Moreover, it is to be noted here that the plaintiff has demanded no damages for loss of profit after his business was destroyed or closed down—but only damages occurring while it was a going concern. *Weiss v. Revenue Building and Loan Association,* 116 N. J. L., 208, 182 A., 891, 104 A. L. R., 129.

It is our opinion that in a case of this kind it is open to the plaintiff to show a loss of profit upon the issue of injury and damage to his business, if he is able to present evidence from which the jury may be able to draw a reasonably accurate conclusion, not based on conjecture or speculation, as to the extent of injury inflicted and amount of damage caused.

In this connection plaintiff testified that the first trouble with leaking from .the water closet was about the first day of March, 1941. He was bothered again in April. He testified that the net profit of the business for the period ending 1 March, 1941, was $574.74, and he sent Mr. Meiselman 10% of it. The loss for the quarter ending 30 September, 1941, was $226.08. "The place started going down after the water came in and I could not show any profit any more. The statement for the quarter ending 31 December, 1941, showed a loss of $676.97. That was after the damage. I have never made any profit in this cafe since this trouble came up. The place started losing money and started going down." The plaintiff had had an audit made of his business, which was given in evidence in corroboration of his statement. We cannot say that the evidence is too remote or too conjectural to sustain a recovery for injury to the business as one of the elements of damage. There was error in sustaining the defendant's exception in this respect.

In the court below, the defendant excepted to the instructions to the jury on the question of compensatory damage because under them the jury was permitted to award damages for injury to the business which, as we have seen, defendant regarded as too speculative. No objection is made in the brief as to the formulas used in the instructions. While there is some inexactness, and perhaps a want of clarity, in the instructions given, the specific objection of the defendant is without merit.

When a hard fought legal battle takes place between able antagonists in a case of this kind, scars are likely to be left on the terrain. But defendant's exceptions in his appeal to the Superior Court do not reveal error of such moment as to justify disturbing the result of the trial.

Appellant's exceptions here are sustained. The cause is remanded to the Superior Court of Guilford County for affirmance of the judgment in the municipal court.

Error and remanded.