FLETCHER, BARNHARDT & WHITE, INC., A NORTH CAROLINA CORPORATION, PLAINTIFF v. JEFFREY STEPHEN MATTHEWS, DEFENDANT

No. 8926SC1390

(Filed 16 October 1990)

1. **Master and Servant § 9 (NCI3d) — salesman — termination of employment — action to recover deficit in draw account**

    In an action by an employer to recover a deficit in a commission draw account from a salesman who had left the company, the Court of Appeals adopted the majority view that a salesman is not required to repay any excess advances over commissions unless the parties either expressly or impliedly agree to do so.

    **Am Jur 2d, Master and Servant § 94.**

    **Personal liability of servant or agent for advances or withdrawals in excess of commissions earned, bonus, or share of profits. 32 ALR3d 802.**

2. **Master and Servant § 9 (NCI3d) — termination of salesman's employment — deficit in draw account — no contract to repay**

    The trial court, sitting without a jury, erred by concluding that plaintiff employer was entitled to recover from defendant salesman the deficit in defendant's draw account after defendant left plaintiff's company where the parties failed to enter into an express agreement about what was to happen if a salesman terminated his employment with a deficit owed in his draw account, there is no evidence that the parties acted or agreed at any point that defendant was to be personally liable for the excess so that the parties did not impliedly agree that defendant was to be personally liable, and defendant did not breach his fiduciary duty to his employer by making plans to compete with his employer before he left the company because there was no showing that defendant misappropriated trade secrets or that he was bound by any covenants not to compete, and defendant earned greater commissions during that time than he had during the same period in the previous year.

**FLETCHER, BARNHARDT & WHITE, INC. v. MATTHEWS**

[100 N.C. App. 436 (1990)]

**Am Jur 2d, Master and Servant § 94.**

**Personal liability of servant or agent for advances or withdrawals in excess of commissions earned, bonus, or share of profits. 32 ALR3d 802.**

APPEAL by defendant from a judgment entered 1 August 1989 by *Judge Claude L. Sitton* without a jury in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 23 August 1990.

Plaintiff, Fletcher, Barnhardt & White, Inc. sells individualized promotional materials to businesses throughout the Southeast. In October 1984 plaintiff hired defendant to be a sales representative. Defendant was paid a base salary during his first year of employment plus any commissions that he earned.

After his first year of employment, defendant was compensated solely on the basis of the commissions that he earned. After being on a straight commission salary for approximately six months, defendant approached the plaintiff and requested that he be allowed to draw against his commissions. A "draw" is an arrangement whereby a sales representative is paid a predetermined amount of money each pay period. The purpose of a draw is to stabilize a salesman's monthly income so that in a month where defendant earned few commissions, he would receive the set amount of pay, and in a month where commissions exceeded the draw, the excess would be retained by plaintiff to repay any deficit incurred during months where draws exceeded commissions. The draw was initially set at $1,750.00 per two week pay period. This amount was increased in May 1986 to $1,950.00 per pay period. Along with his paycheck, defendant received a monthly statement which advised him of his commissions for that month versus the draw he was receiving. In months where his commissions exceeded his draw, the excess was applied to any deficits which had accrued.

In October 1987, defendant began the initial steps to form a business to compete with plaintiff. On 7 February 1988, defendant went to the home of Mr. Fletcher, president of the plaintiff corporation, and informed him of his intention to leave his employ and begin operation of his own company. Defendant, after that exchange, indicated that he would pay back the money the plaintiff demanded.

**FLETCHER, BARNHARDT & WHITE, INC. v. MATTHEWS**

[100 N.C. App. 436 (1990)]

On 18 May 1989, plaintiff sued the defendant to recover the deficit in defendant's draw account. The matter was tried on 17 July 1989 before Judge Sitton without a jury. The court concluded that the defendant owed plaintiff the money because of the existence of express and implied contracts and on the grounds that defendant breached his fiduciary duties of good faith, loyalty and honesty in his dealings with plaintiff. From this judgment, defendant appeals.

*Petree Stockton & Robinson, by David B. Hamilton and B. David Carson, for plaintiff-appellee.*

*Catharine B. Arrowood and Blair S. Levin for defendant-appellant.*

LEWIS, Judge.

The issue before this Court is whether the trial court erred when it concluded that appellant was personally liable for the deficit in his draw account. Defendant argues that the trial court erred in concluding that he owed the plaintiff the deficit reflected in his draw when he resigned from plaintiff because of (1) the existence of an express contract; (2) the existence of an implied-in-fact contract; and (3) defendant's breach of a fiduciary duty owed to plaintiff. We address each of these assignments in turn.

[1] We first note that the question of whether an employee is liable to his employer for excess advances over the amount of commissions earned is a matter of first impression in North Carolina. Some jurisdictions hold that the excess of draws over commissions should be treated as a loan, thereby making the agent personally liable to the principal. *Liberty Nat. Life Ins. Co. v. Longshore*, 222 Ala. 408, 132 So. 614 (1931); *Producers' Lumber Co. v. Guiniven*, 260 Pa. 423, 103 A. 916 (1918). However, the majority view is that when advances are made to a salesman and charged against his commissions earned, he is not required to repay any excess advances over commissions unless the parties either expressly or impliedly agree to do so. *Selig v. Bergman*, 43 Wash. 2d 205, 260 P.2d 883 (1953). The presumption that no liability was intended obtains in all jurisdictions which have adopted a position on the subject except in Pennsylvania and Alabama. *See* Personal Liability of Servant or Agent For Advances or Withdrawals in Excess of Commissions Earned, Bonus or Share of Profits. 32 A.L.R. 3d 802, 809-811 (1970). The rationale for this rule is that advances are generally in the nature of salary, and not a loan to the employee,

unless it is explicit by agreement or otherwise that the advances are intended to be a loan. Furthermore, "the advance is given to the agent to promote the principal's business; and therefore a mutual benefit is conferred . . . a fund will be created from which both parties will be compensated—the agent for his time and labor and the principal for his advanced money." *Hubley v. Cram*, 404 N.W.2d 389, 390-91 (Minn. App. 1987); *Tannen v. Equitable Life Ins. Co. of Washington, D.C.*, 303 So.2d 352, 354-55 (Fla. Dist. Ct. App. 1974). Finally, this rule is premised on the fact that the employer has superior bargaining power and this disparity warrants imposing on the employer the duty of making explicit his rights under the employment agreement, especially where he demands the return of previously transferred funds.

We adopt the majority view and look to the court's findings of fact and conclusions of law to determine whether the parties entered into a binding contract to repay the excess draw. If there is any competent evidence to support the Findings of Fact, those findings are conclusive on appeal. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975).

## I. Express Contract

[2] Plaintiff argues that there is substantial evidence to support the trial court's findings and to uphold its conclusion that an express contract exists. The trial court found as fact that defendant initially approached the plaintiff and requested that he be placed on a draw account. The parties negotiated the amount of the draw. Matthews further negotiated an increase in the amount of his draw in November of 1986. The court also found that defendant received monthly statements showing the amount of the commissions earned, the amount of his draw, and the balance remaining in the draw account. In the months where his commission exceeded his draw and there was a deficit in his draw account, the excess of commissions over draw was applied to reduce the deficit which had accrued. The defendant never objected to this procedure. Plaintiff also points out the findings of the trial court that defendant was approached by the president of plaintiff corporation about the large amount of the deficit in his draw. Defendant indicated that he was aware of the deficit and that he hoped to have the deficit paid off by the end of the year. After he told Mr. Fletcher he resigned, the defendant stated to Fletcher that he intended to pay the money back to the company. The day after his resignation,

plaintiff again stated that he intended to pay back the money owed in his draw account.

Applying basic principles of contract law to the present case, we find that the parties failed to enter into an express agreement about what was to happen if a salesman terminated his employment with a deficit owed in his draw account. First, none of the events described above indicate that plaintiff and defendant ever discussed what would happen if defendant terminated or resigned from his employment with a deficit owed in his account. Where a material term to a contract is missing, the agreement is not legally binding upon the parties. Second, the statements made by defendant indicating that he intended to repay the money to the plaintiff are not enforceable because they were made *after* he terminated his employment and thus were not supported by consideration. *See Roberts & Johnson Lumber Co. v. Horton*, 232 N.C. 419, 61 S.E.2d 100 (1950) (mere promise unsupported by consideration is unenforceable); *Lester v. Kahn-McKnight Co.*, 521 So.2d 312 (Fla. Dist. Ct. App. 1988) (post-employment promise not supported by consideration and therefore unenforceable as a matter of law).

Other evidence also indicates the parties did not intend to impose personal liability. For instance, other similarly employed salespersons left the company with deficits in their draw accounts and were not required to repay the deficit to plaintiff. Defendant also had a separate loan account which was designated in plaintiff's books as a "loan" and upon which defendant made payments, including interest. Finding no competent evidence of an express contract, we hold that the trial court erred in concluding that the parties expressly agreed that upon resignation or termination of employment the defendant would repay any deficit in his draw account. We note that plaintiff could easily have protected its interests by executing a contract, limiting the amount of the draw, requiring a promissory note from defendant, or firing him altogether. However, Fletcher, Barnhardt failed to take any of these precautions.

## II. Implied Contract

The trial court also found an implied-in-fact contract based upon the parties' above-described conduct.

> A 'contract implied in fact'. . . arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation is implied or presumed from their acts. . . .

*Snyder v. Freeman*, 300 N.C. 204, 217-218, 266 S.E.2d 593, 602 (1980) (citations omitted). Plaintiff argues that the actions of plaintiff and defendant support the conclusion of the trial court that a contract implied in fact existed creating personal liability for the defendant. We disagree. The evidence shows that the parties' agreement for advances was that any advances paid to the defendant were to be offset by any commissions earned. There is no evidence that the parties acted or agreed at any point that defendant was to be personally liable for the excess. Finding no agreement to the contrary, the plaintiff has failed to rebut the presumption that plaintiff's sole source of reimbursement was intended to be the fund contemplated, that is, the anticipated commissions, bonus, or profits. *Miller v. Levy*, 60 Ohio App.2d 78, 395 N.E.2d 509 (1978). The trial court erred in concluding that the parties either expressly or impliedly agreed that defendant was to be personally liable for the excess advances.

### III. Breach of fiduciary duty

Finally, defendant argues that the trial court erred in concluding that by forming a competing business while employed by plaintiff, he breached his fiduciary duty as an employee. A salesman may be found liable to repay advances from a draw account against commissions, if he has breached his contract or his fiduciary duty to his employer. *St. Cloud Aviation, Inc. v. Hubbell*, 356 N.W. 2d 749 (Minn. App. 1984). The trial court concluded as a matter of law that:

> [t]he acts and conduct of Matthews in forming a competing business while still employed by Fletcher Barnhardt breached the fiduciary duty he owed to them and established that he did not endeavor in good faith to earn commissions during his employment at Fletcher Barnhardt. For this reason, Fletcher Barnhardt is entitled to a judgment equal to the deficit.

We find that the trial court erred in finding that defendant breached his fiduciary duty to his employer by making plans to compete with his employer before he left the company. There is no showing that defendant misappropriated trade secrets from plaintiff, nor any showing that he was bound by any covenants not to compete. Furthermore, during this time period, defendant earned greater commissions than he had during the same time period in the previous year. We hold that under these circumstances, his actions in preparing to leave the company and in forming his own business were

not a breach of duty owed to plaintiff and do not impose personal liability as a matter of law. *See Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 382 A.2d 564 (1978).

Employers can easily make their rights to repayment clear by setting out the terms of these draw accounts with their employee-salespersons at the time the draw accounts are created. Because we find no personal liability on the part of the defendant, we reverse and remand this case for entry of judgment in favor of the defendant.

Reversed and remanded.

Judges WELLS and EAGLES concur.