KENNETH W. LONG AND ROBERT C. HOWE, PLAINTIFFS-APPELLANTS v.
VERTICAL TECHNOLOGIES, INC., A NORTH CAROLINA CORPORATION, AND
MELLON BANK, N.A., A NATIONAL BANKING ASSOCIATION, DEFENDANTS-
APPELLEES

No. 9220SC1110

(Filed 15 February 1994)

1. **Libel and Slander §§ 43, 44 (NCI4th)— slander—plaintiffs' misuse of company resources—statements protected by qualified privilege—statements not actionable per se**

    The trial court did not err in allowing defendants' motion for partial summary judgment on plaintiffs' complaint for slander and defamation since the statements in question were made during a staff meeting regarding plaintiffs' termination of employment; one plaintiff acknowledged that the statements were made in good faith and without malice; the statements thus were not actionable by reason of qualified privilege; and though the statements may have related to plaintiffs' not doing business in the best interests of defendant or their misuse of company resources, the statements nevertheless were not actionable per se as it was not shown that they were false, touched plaintiffs in their trade or occupation, and contained an imputation necessarily hurtful in its effect on plaintiffs' business.

    **Am Jur 2d, Libel and Slander § 444.**

2. **Labor and Employment § 68 (NCI4th)— no wrongful termination of employment—sufficiency of evidence**

    The trial court did not err in failing to find that plaintiffs were wrongfully terminated where the evidence tended to show that plaintiffs sold their computer software company, VTI, to defendants; plaintiffs entered into employment agreements with VTI; plaintiffs subsequently formed two new companies while working for VTI; they did not disclose to defendants all of their activities with regard to use of VTI property to further the affairs of their company, including use of VTI employees, facilities, computers, computer programs, telephone number and address; and plaintiffs still had a fiduciary duty of loyalty and fair dealing as long as they were employees of VTI.

    **Am Jur 2d, Master and Servant §§ 60-70.**

LONG v. VERTICAL TECHNOLOGIES, INC.

[113 N.C. App. 598 (1994)]

3. **Labor and Employment § 39 (NCI4th)— breach of loyalty and fiduciary obligations by employees—damages—sufficiency of evidence**

The trial court did not err in finding that defendant was entitled to recover from plaintiffs approximately $70,000 representing the fair value of services plaintiffs caused defendant to provide to plaintiffs' company which they operated on the side, since the evidence showed that plaintiffs caused defendant's employees to spend 753 hours of work time on the development of plaintiffs' side company's products, and defendant presented evidence that the hourly rate for the work was $93.

**Am Jur 2d, Master and Servant §§ 2, 14.**

Appeal by plaintiffs from judgment entered 23 July 1992 by Judge Melzer A. Morgan, Jr. in Union County Superior Court. Heard in the Court of Appeals 5 October 1993.

*Koy E. Dawkins, P. A., for plaintiffs-appellants.*

*Robinson, Bradshaw & Hinson, P. A., by A. Ward McKeithen, for defendants-appellees.*

JOHNSON, Judge.

Plaintiff Kenneth W. Long (Long) formed a corporation, Vertical Technology, Inc. (VTI) in 1984. VTI operated under the name of Backroom Systems Group, developing and selling computer programs to be used with small computers or PC's in the financial industry. Plaintiff Robert C. Howe (Howe) was Senior Vice President and Operations Manager for VTI. In September 1988, VTI was purchased by defendant Mellon Bank (Mellon) and both Long and Howe entered into employment agreements with VTI for a term of three years; the agreements were identical except as to salary and bonus compensation. In 1990, Mellon began putting VTI's employees, including Long and Howe, on the Mellon payroll. This caused conflicts between Long, Howe and the Mellon officers. In the summer of 1990, Long and Howe were informed they were going to be terminated because of these conflicts, but compensated until the end of their respective employment agreements. Long and Howe then formed two new companies, Financial Systems Group, Inc. (FSG) and Protocorp, Inc., which they planned to operate after their termination. However, the Mellon officer who had decided

to terminate Long and Howe left before the termination was put into effect, and Long and Howe were not terminated that summer.

In August of 1990, the Mellon officer in charge of VTI, Allan Woods (Woods) met with Long and began discussing a buy-back or repurchase of VTI by Long and Howe. During the exchange of offers and negotiations, Long wrote Woods a letter in which he disclosed the formation of the two new companies; discussed alternatives for the survival of VTI, including the repurchase from Mellon Bank; and stated "I feel very awkward at this point proposing any sort of business case from a Mellon manager point of view. The only alternative I feel I am left with is to approach you as one business man to another looking for a deal that will be mutually beneficial."

One of the new companies formed by Long and Howe, FSG, was operated by Terry Nelson (Nelson), a former VTI sales representative. In October 1990, Nelson sent out solicitation letters introducing FSG, identifying himself as a former VTI employee, and identifying Long and Howe as president and senior vice president of VTI and as "other principals" of FSG. This letter went to a number of VTI and Mellon customers.

In January 1991, a force of Mellon officers and employees including the newly elected President of VTI, James Luisi, took over the operation of VTI and terminated Long and Howe. Long and Howe were informed they were terminated "for cause" and would be compensated only for January 1991. Long and Howe both filed an action against VTI and Mellon alleging wrongful termination, slander and defamation. VTI and Mellon countered alleging breach of loyalty and fiduciary obligations and claiming damages for Long and Howe using VTI facilities and personnel in connection with FSG projects. A motion for summary judgment was filed by defendants on the issues of slander and defamation, and the trial court granted defendants partial summary judgment. Plaintiffs' claim for wrongful termination and defendants' counterclaims were tried before the trial court without a jury in Union County Superior Court. The trial judge held for defendants and entered judgment against plaintiffs. From the judgment entered, plaintiffs appeal.

[1] The first issue presented for review is whether the trial court erred in allowing defendants' motion for partial summary judgment on plaintiffs' complaint, count II slander and defamation.

LONG v. VERTICAL TECHNOLOGIES, INC.

[113 N.C. App. 598 (1994)]

Summary judgment is a device whereby judgment is rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). "Thus a defending party is entitled to summary judgment if he can show that claimant ·cannot prove the existence of an essential element of his claim, . . . or cannot surmount an affirmative defense which would bar the claim." *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981) (citation omitted). "In ruling on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party." *Hinson v. Hinson*, 80 N.C. App. 561, 563, 343 S.E.2d 266, 268 (1986) (citation omitted). The issue before us then is whether the evidence taken in a light most favorable to plaintiffs was sufficient to establish any genuine issue of material fact. We hold as a matter of law, it was not.

Plaintiffs contend that James Luisi, the newly elected President of VTI, slandered or defamed plaintiffs by making demeaning and prejudicial statements to third parties. The statements in question, "insinuated that Long and Howe were not handling business correctly and . . . doing something 'shady'." Defendants however, argue that the statements are qualifiedly privileged.

> Slander is commonly defined as "the speaking of base or defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood." . . . Slander, . . . may be actionable *per se* or only *per quod*. That is, the false remarks in themselves (*per se*) may form the basis of an action for damage, in which case both malice and damage are, as a matter of law, presumed; or the false utterance may be such as to sustain an action only when causing some special damage (*per quod*), in which case both the malice and the special damage must be alleged and proved. (Citations omitted.)

*Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969). However, even if it is determined that a statement is slanderous, the law recognizes certain communications as privileged. Privilege does not destroy the actionable character of a defamatory communication, but is available only by way of defense.

> A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he

has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Troxler v. Charter Mandala Center, Inc.*, 89 N.C. App. 268, 272, 365 S.E.2d 665, 668, *disc. review denied*, 322 N.C. 838, 371 S.E.2d 284 (1988) (citations omitted). The essential elements for the qualified privilege to exist are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and the proper parties only. *Stewart v. Check Corp.*, 279 N.C. 278, 182 S.E.2d 410 (1971). Additionally, a qualified privilege may be lost by proof of actual malice on the part of the defendant. *Id.*

The depositions of Enroth, and Fortson, employees of VTI to whom the alleged statements were made, show that the statements in question were made during a VTI staff meeting regarding the termination of Long and Howe. Additionally, Long acknowledged that the statements were made in good faith and without malice. Thus, the alleged statements are not actionable by reason of qualified privilege and the lack of evidence to support that the statements were not made in good faith and with malice.

Alternatively, plaintiffs allege the statements made by defendants' agent were slanderous per se because they were uttered about plaintiffs' business or professional relationship.

There are several categories of slander which are actionable per se: (1) statements which charge plaintiff with a crime or an offense of moral turpitude; (2) statements which impeach his/her trade or profession; (3) statements which impute to him/her a loathsome disease. *Williams v. Freight Lines, Inc. and Willard v. Freight Lines, Inc.*, 10 N.C. App. 384, 179 S.E.2d 319 (1971).

The alleged statements in question, are slander per se only if they come under the second category listed above, i.e., statements which impeach one's trade or profession. In order to come within this category of slander, the false statement must do more than merely injure a person in his business. The false statement " '(1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business.' " *Tallent v. Blake*, 57 N.C. App. 249, 253, 291 S.E.2d 336, 339 (1982) (citations omitted). Moreover, in order to be ac-

LONG v. VERTICAL TECHNOLOGIES, INC.

[113 N.C. App. 598 (1994)]

tionable, the defamatory statement must be false. The truth of a statement is a complete defense. *Parker v. Edwards*, 222 N.C. 75, 21 S.E.2d 876 (1942).

From the depositions presented, it appears that the alleged slanderous comments were related to Long and Howe not doing business in the best interest of VTI and their misuse of VTI resources. We do not find that these statements meet the test set out in *Tallent*. Nor do we find that the statements are false. We therefore find the trial court correctly granted defendants partial summary judgment as to the slander and defamation claims.

[2] Plaintiffs argue next that the trial court erred in failing to find (1) that the relationship of Long and Howe to the newly formed companies was sufficiently disclosed to Mellon and that a new relationship existed between Long, Howe and Mellon after the letter dated 24 August 1990 and (2) that plaintiffs were wrongfully terminated.

This argument relates to the findings of fact and conclusions of law made by the trial judge. The standard for review as to findings of fact made by a trial judge is the same standard used to evaluate a jury trial; the findings of fact are conclusive if supported by competent evidence. *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). Where trial is by judge and not by jury, the trial court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. *Id.*

Long and Howe argue that Long wrote a letter to Mellon in which he disclosed their formation of two new companies; discussed the alternatives for the survival of VTI, including the repurchase from Mellon; and stated "I feel very awkward at this point proposing any sort of business case from a Mellon manager point of view. The only alternative I feel I am left with is to approach you as one business man to another looking for a deal that will be mutually beneficial." With that letter Long and Howe argue a new relationship existed because they began an exchange of offers and negotiations for Long and Howe to buy back VTI from Mellon. Plaintiffs also argue that this letter sufficiently disclosed to Mellon the formation and activities of the two new companies.

However, we note that: (1) the letter did not sufficiently disclose all of the activities of Long and Howe in regard to their use of VTI property to further FSG affairs and (2) Long and Howe still had a fiduciary duty of loyalty and fair dealing as long as they were employees of VTI. In essence, no new relationship was formed as argued by plaintiffs.

Additionally, Long and Howe admitted in their depositions that they did not disclose many of their activities to Mellon. They also acknowledged that they: (1) caused VTI resources, including employees, facilities, computers and computer programs to be used to develop the computer software products of FSG and to advance the business of FSG; (2) caused and allowed persons employed by and working for FSG and not employees of VTI to have offices at VTI and to have use of VTI computers and programs to develop FSG products; (3) used the VTI address and telephone number on promotional materials and products of FSG and maintained and stored FSG records and files on VTI's computer system; and (4) themselves actively worked for and promoted FSG's product and development and business during normal business hours.

> Manifestly, when a servant becomes engaged in a business which necessarily renders him a competitor and rival of his master, no matter how much or how little time and attention he devotes to it, he has an interest against his duty. It would be monstrous to hold that the master is bound to retain the servant in his employment after he has thus voluntarily put himself in an attitude hostile to his master's interests. (Citations omitted.)

*In re Burris*, 263 N.C. 793, 795, 140 S.E.2d 408, 410 (1965). Additionally, where an employee deliberately acquires an interest adverse to his employer, he is disloyal, and his discharge is justified. *Id.* The law as well as the evidence is thus clear. The trial court properly concluded that the activities of Long and Howe constituted: (1) a material breach of their express contractual duties under the agreements to perform their services in good faith and in the best interests of VTI; (2) a material breach of their fiduciary duty of good faith, fair dealing and loyalty to VTI; and (3) actions for which they should have been discharged.

Next, plaintiffs contend and argue that defendants acted in bad faith by failing to inform them of concerns regarding conflicts of interest or a breach of fiduciary duties, even though it was

considered a serious threat to plaintiffs' continued employment and sale of VTI to them. However, we find that there is sufficient evidence to support the trial court's finding that defendant Mellon engaged in good faith discussions with plaintiffs regarding the possible purchase of VTI. Additionally, we find that there is sufficient evidence to support defendant Mellon's decision to continue to employ plaintiffs until they were able to form an honest belief that plaintiffs were no longer loyal or performing in good faith.

**[3]** Plaintiffs finally argue that the trial court erred in finding that VTI was entitled to recover from Long and Howe the sum of $70,029.00 representing the fair value of services plaintiffs caused VTI to provide to FSG. We disagree.

The evidence shows that Long and Howe caused VTI employees to spend 753 hours of VTI work time on the development of FSG products. VTI presented evidence that the hourly rate for the work was $93.00. The evidence supports the trial court's finding that VTI is entitled to $70,029.00. Therefore, we find the conclusion of the trial court, that Long and Howe were jointly and severally liable to VTI for the fair value of the services they caused VTI to provide FSG, and that the fair value of such services is $70,029.00 is fully supported by the evidence.

The decision of the trial court is affirmed.

Judges COZORT and McCRODDEN concur.