ROBERT EARL DALTON D/B/A B. DALTON & COMPANY, PLAINTIFF v. DAVID CAMP, NANCY J. MENIUS AND MILLENNIUM COMMUNICATION CONCEPTS, INC., DEFENDANTS

No. COA98-1330

(Filed 21 September 1999)

**1. Employer and Employee— breach of duty of loyalty—summary judgment improper—going beyond merely preparing to compete**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court erred in granting summary judgment for defendant Camp on the breach of duty of loyalty claim because there is a genuine issue of material fact as to whether Camp went beyond merely preparing to compete.

**2. Employer and Employee— breach of duty of loyalty—summary judgment proper—merely preparing to compete**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court properly granted summary judgment for defendant Menius on the breach of duty of loyalty claim because her activities while employed by plaintiff were mere preparations to compete.

DALTON v. CAMP

[135 N.C. App. 32 (1999)]

**3. Unfair Trade Practices— Unfair and Deceptive Trade Practices Act—summary judgment proper—employer-employee relationship not covered**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court properly granted summary judgment for defendant Camp on the unfair and deceptive trade practices claim because the Unfair and Deceptive Trade Practices Act does not cover employer-employee relations, and Camp's conduct primarily occurred during his employment with plaintiff.

**4. Unfair Trade Practices— Unfair and Deceptive Trade Practices Act—summary judgment proper—conduct not unfair and deceptive under facts presented**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court properly granted summary judgment for defendant Menius on the unfair and deceptive trade practices claim because although her conduct after her resignation would apply to Chapter 75, her conduct of forming a competing business, obtaining financing for that business, and soliciting plaintiff's clients after she left plaintiff's employment does not amount to unfair and deceptive trade practices on the facts presented.

**5. Unfair Trade Practices— Unfair and Deceptive Trade Practices Act—summary judgment proper—company acted solely through employees**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court properly granted summary judgment for defendant Millennium Communication Concepts on the unfair and deceptive trade practices claim because it acted solely through Camp and Menius, and their actions did not constitute an unfair and deceptive trade practice.

**6. Wrongful Interference— tortious interference with prospective advantage—summary judgment improper—still employed—not legitimate exercise of own rights**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court erred in granting summary judgment in favor of defendant Camp on the tortious interference

DALTON v. CAMP

[135 N.C. App. 32 (1999)]

with prospective advantage claim because if Camp competed while still employed by plaintiff, then Camp was not acting in the legitimate exercise of his own rights, but instead to gain an advantage for himself at plaintiff's expense.

7. **Wrongful Interference— tortious interference with prospective advantage—summary judgment proper—adverse acts after left employment**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court properly granted summary judgment in favor of defendant Menius on the tortious interference with prospective advantage claim because she did not act adversely to plaintiff's interests until after she left his employment, and at that time she could freely compete with him.

8. **Wrongful Interference— tortious interference with prospective advantage—summary judgment proper—competitor**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court properly granted summary judgment in favor of defendant Millennium Communication Concepts on the tortious interference with prospective advantage claim because it was never more than a competitor to plaintiff and a competitor has the privilege to induce another party not to renew or enter into a contract with another as long as the competitor solicits legally and does not gain an unfair advantage at the other's expense.

9. **Conspiracy— summary judgment proper—mere conjecture—must show common agreement and objective**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and their new corporation, the trial court did not err in granting summary judgment for all three defendants on the conspiracy claim because plaintiff relies on mere conjecture and has shown no facts sufficient to support the allegation of defendants' common agreement and objective.

10. **Damages— summary judgment properly denied—evidence of anticipated profits—not overly speculative**

In a claim arising out of plaintiff-former employer's allegations of unfair competitive activity by defendants, employees and

DALTON v. CAMP

[135 N.C. App. 32 (1999)]

their new corporation, the trial court did not err in denying defendants' motion for summary judgment on the issue of damages because the testimony from plaintiff's expert witness on anticipated profits was not overly speculative and is admissible to aid the jury in estimating the extent of the injury sustained.

Appeal by plaintiff from judgment entered 13 July 1998 by Judge H.W. Zimmerman, Jr. in Randolph County Superior Court. Heard in the Court of Appeals 16 August 1999.

*Moser Schmidly Mason & Roose, by Stephen S. Schmidly and Andrew K. McVey, for plaintiff-appellant.*

*Wyatt Early Harris & Wheeler, L.L.P., by William E. Wheeler, for defendant-appellees.*

EAGLES, Chief Judge.

This appeal arises out of a former employer's allegations of unfair competitive activity by employees and their new corporation.

Plaintiff Robert Earl Dalton d/b/a B. Dalton & Company engages in the business of selling advertisements and publishing employment magazines. In July of 1993, plaintiff obtained the rights to publish the employment magazine for Klaussner Furniture Industries, Inc.(KFI) for a three-year period. The agreement called for Klaussner to pay all print charges of $3,575.00 per issue. Plaintiff then hired defendant David Camp as his General Manager. Plaintiff gave Camp full responsibility for the KFI publication. Plaintiff later acquired rights to publish several other employee magazines and gave full responsibility to Camp for those publications. Camp alleges that at the time of his initial employment, plaintiff promised that he would offer Camp an ownership interest in the company in the near future. In December of 1995, plaintiff hired defendant Nancy Menius. Both defendants were at-will employees and neither had "a covenant not to compete" with plaintiff.

In March of 1994, plaintiff published the first issue of KFI's magazine *Inside Klaussner*. Plaintiff continued to produce the magazine over the next three years. KFI officials expressed satisfaction with the plaintiff's efforts.

On or about 15 January 1997, plaintiff and both defendant Menius and Camp entered discussions with KFI officials about renewing the publication agreement. Among the topics discussed was a price

reduction that KFI expected to receive from plaintiff. Plaintiff said he would "get back to" KFI. Plaintiff alleges that the parties left this meeting with an understanding that the current publishing relationship would continue. Immediately following the meeting, Camp engaged in the first of a series of discussions with KFI's representative, Mark Walker. Plaintiff alleges that many of these discussions took place while Camp was at KFI's place of business in connection with his duties as plaintiff's general manager. Defendants respond that Walker initiated each conversation and that Camp never pressured Walker to do business with him.

In February 1997, plaintiff alleges Menius engaged in several conversations with her fellow employee, Camp, about forming a competing company. Defendants claim that no "serious" conversations took place until after defendant Menius resigned on 28 February 1997. Following her resignation, both defendants prepared a business plan for defendant Millennium Communication Concepts, Inc. (MCC). In March 1997, defendants submitted their business plan to a lending institution and represented Camp to be a former employee of plaintiff. On 13 March 1997, Menius incorporated MCC with defendants being the sole officers, directors, and shareholders. Also in March, MCC entered into a written publishing contract with KFI. This contract gave MCC the exclusive right to publish *Inside Klaussner* for twenty months beginning in May 1997. The contract called for KFI to pay the printing costs of $3,245.00 per month and to pay all production costs of $1,227.00 per month. Camp signed the contract on behalf of MCC while still employed by plaintiff. On 26 March 1997, Camp resigned from plaintiff's employment and informed plaintiff of his activities. Subsequently, MCC obtained the business of several of plaintiff's other customers.

Plaintiff sued Camp, Menius, and MCC alleging breach of the fiduciary duty of loyalty, conspiracy to appropriate customers, tortious interference with contract, interference with prospective advantage and unfair and deceptive trade practices under Chapter 75. Judge Peter M. McHugh dismissed plaintiff's claim for tortious interference with contractual and business relations on 12 September 1997. Prior to trial on the remaining claims Judge H.W. Zimmerman, Jr. granted defendants' motion for summary judgment on 13 July 1998. Plaintiff appeals from the order granting summary judgment only.

Plaintiff contends that the trial court erred in granting summary judgment, arguing that there were genuine issues of material fact concerning defendants' actions. Summary judgment is properly granted

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c); *Toole v. State Farm Mut. Auto. Ins. Co.*, 127 N.C. App. 291, 294, 488 S.E.2d 833, 835 (1997). All of the evidence is viewed in the light most favorable to the nonmoving party. *Coats v. Jones*, 63 N.C. App. 151, 303 S.E.2d 655 (1983), *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). The movant bears the burden of proving the absence of any genuine issue of material fact. *Holley v. Burroughs Wellcome Co.*, 318 N.C. 352, 348 S.E.2d 772 (1986).

I. Breach of the Duty of Loyalty

[1] We first consider plaintiff's claims for breach of the duty of loyalty. One may create a confidential or fiduciary relationship with another by instilling a special confidence in him. *See Speck v. N.C. Dairy Foundation*, 311 N.C. 679, 685, 319 S.E.2d 139, 143 (1984), citing *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). The existence of such a relationship binds the individual to act with good faith and loyalty towards the one instilling confidence. *Id; Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 470, 500 S.E.2d 732, 736, *disc. review allowed*, 349 N.C. 232, 514 S.E.2d 271 (1998). An employee must faithfully serve his employer and perform his duties with reasonable diligence, care, and attention. *McKnight v. Simpson's Beauty Supply, Inc.*, 86 N.C. App. 451, 453, 358 S.E.2d 107, 109 (1987). Where an employee deliberately acquires an interest adverse to his employer, he is disloyal. *In Re Burris*, 263 N.C. 793, 795, 140 S.E.2d 408, 410 (1965).

Plaintiff claims that summary judgment is inappropriate because there is a genuine issue of material fact as to whether Camp breached his duty of loyalty. We agree. Plaintiff placed Camp in the position of General Manager and gave him sole responsibility over plaintiff's publications. The evidence shows that defendant Camp was responsible for editing, designing, and publishing plaintiff's magazines. Additionally, defendant Camp handled the payroll, checkbook, and accounts dealing with the plaintiff's publications. His responsibilities necessarily included some "one on one" contact with customers including monthly contacts with KFI's representatives. Plaintiff argues that by this pattern of dealing he instilled special confidence in Camp. Accordingly, plaintiff contends that Camp was required to be loyal to plaintiff.

DALTON v. CAMP

[135 N.C. App. 32 (1999)]

Plaintiff presented evidence that defendant Camp began discussions with Mark Walker of KFI, while still plaintiff's employee. Those conversations all occurred while Camp was on official business for plaintiff. In those discussions, Camp expressed dissatisfaction with the plaintiff and raised the possibility of forming his own company. Walker and Camp also considered the possibility of Camp publishing KFI's magazine. The talks culminated in the signing of an exclusive publication agreement between Camp and KFI. This signing took place before Camp left plaintiff's employment. Camp did not disclose to plaintiff his adverse activities prior to resigning his employment. Menius and Camp went to talk with another of plaintiff's customers, Acme-McCrary, while plaintiff still employed Camp. Menius admitted that she and Camp solicited Acme-McCrary's business.

Defendants argue that *Fletcher, Barnhardt & White, Inc. v. Matthews*, 100 N.C. App. 436, 397 S.E.2d 81 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 411 (1991) controls here. However, *Fletcher* dealt with the situation where the employee had merely prepared to compete with his employer. *Id.* at 441, 402 S.E.2d at 84. This Court stated that merely forming a company is not enough to find a breach of a fiduciary duty. *Id.* From plaintiff's forecast of the evidence, it appears that Camp's actions went beyond merely forming a company. Therefore, plaintiff has presented a genuine issue of material fact as to whether Camp went beyond merely preparing to compete. If Camp, while he was plaintiff's employee, was actually competing without plaintiff's consent, then he has breached his duty of loyalty. *See Long v. Vertical Technologies, Inc.*, 113 N.C. App. 598, 439 S.E.2d 797(1994); *In re Burris*, 263 N.C. at 795, 140 S.E.2d at 410. Therefore, summary judgment was improper.

[2] Plaintiff argues that he has presented a genuine issue of material fact as to whether Menius breached her duty of loyalty. We disagree. At the most, plaintiff has shown that Menius discussed forming a new company with Camp while plaintiff employed her. There was no showing that Menius talked with Walker one on one prior to her leaving plaintiff's employment nor any showing that she was bound by a covenant not to compete. Plaintiff acknowledges that Menius engaged in most of her questioned conduct after she left plaintiff's employment. Menius's activities while employed by plaintiff may be best described as mere preparations to compete. Merely preparing to compete is not a breach of the duty of loyalty. *See Fletcher*, 100 N.C. App. at 441-42, 397 S.E.2d at 84. Therefore, summary judgment was proper as to Menius.

## II. Chapter 75 Unfair and Deceptive Trade Practices

[3] Plaintiff argues that he has presented a genuine question of material fact as to defendants unfair and deceptive trade practices. We disagree. Chapter 75 of the North Carolina General Statutes establishes a cause of action for unfair methods of competition or unfair or deceptive acts in or affecting commerce. N.C.G.S. § 75-1.1 (1994). Chapter 75 protects businesses as well as consumers. *McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 683, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988). However, our Supreme Court has expressly stated that the Unfair and Deceptive Trade Practices Act "does not cover employer-employee relations." *Hajmm Co. v. House of Raeford Farms*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991) (citing *Buie v. Daniel International*, 56 N.C. App. 445, 289 S.E.2d 118, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982)).

Camp's conduct primarily occurred during his employment with plaintiff. In fact, it was Camp's employment relationship with plaintiff that placed him in the position to negotiate with Walker. It follows that Camp's conduct was not within the purview of Chapter 75. *See Sara Lee Corp.*, 129 N.C. App. at 473, 500 S.E.2d at 738. Therefore, summary judgment was proper as to Camp.

[4] We next consider the unfair and deceptive trade practice claim as to Menius. While this is a closer question, we also conclude that summary judgment was proper as to Menius. Chapter 75 only applies to Menius's conduct after her resignation became effective on 28 February 1997. *See Hajmm Co.*, 328 N.C. at 593, 403 S.E.2d at 492. Whether a practice is unfair or deceptive depends on the facts of each case and the impact on the marketplace. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403(1981). An act is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious. *Process Components, Inc. v. Baltimore Aircoil Co.*, 89 N.C. App. 649, 366 S.E.2d 907, *aff'd*, 323 N.C. 620, 374 S.E.2d 116 (1988). Here plaintiff has shown that Menius formed a competing business, obtained financing for that business, and began to solicit plaintiff's clients after she left plaintiff's employment. We hold that this conduct does not amount to unfair and deceptive trade practices on the facts presented.

[5] We likewise conclude that summary judgment was proper as to MCC. In this case, MCC acted solely through Menius and Camp. Because the actions of Menius and Camp may not constitute an unfair and deceptive trade practice under the laws of this state, we conclude

that MCC was also not liable. Therefore, summary judgment for MCC was proper.

### III. Interference With Prospective Advantage

[6] Defendants argue that plaintiff has failed to preserve this issue for appeal. This argument has no merit. On 12 September 1997, Judge Peter McHugh dismissed plaintiff's claim that sought damages for interference with contractual and business relations with KFI. However, Judge McHugh denied defendants' motion to dismiss as to the plaintiff's claim for interference with prospective advantage as to KFI. Judge H.W. Zimmerman, Jr. later granted defendants' motion for summary judgment which included plaintiff's claim for prospective advantage. While plaintiff failed to appeal Judge McHugh's motion to dismiss on the interference with contractual and business relations claim, plaintiff did appeal Judge Zimmerman's order regarding his claim for interference with prospective advantage. Accordingly, we hold that plaintiff has preserved this issue.

In order to maintain an action for tortious interference with prospective advantage, plaintiff must show that defendants induced KFI to refrain from entering into a contract with plaintiff without justification. Additionally, plaintiff must show that the contract would have ensued but for defendants' interference. *Cameron v. New Hanover Memorial Hospital,* 58 N.C. App. 414, 440, 293 S.E.2d 901, 917, *disc. review denied,* 307 N.C. 127, 297 S.E.2d 399 (1982). Defendants must not be acting in the legitimate exercise of their own right, "but with a design to injure the plaintiff or gain some advantage at his expense." *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.,* 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992).

Here the depositions and pleadings have shown that KFI had a positive reaction to plaintiff's efforts with KFI's magazine. In his deposition, Walker testified that KFI had no complaints or problems with either the publication, quality, or distribution of *Inside Klaussner* during the time that plaintiff produced it. Plaintiff has presented evidence showing that all parties left the 15 January 1998 meeting with the understanding that plaintiff would continue with the production of KFI's magazine. Additionally, there is no question that plaintiff continued to produce KFI's magazine beyond the terms of the original contract. Clearly, plaintiff has presented a genuine issue of material fact as to whether the continuing relationship between KFI and plaintiff would have persisted and whether Camp's actions induced KFI to refrain from renewing its contract.

The final issue is whether the defendants as a matter of law were justified in their actions. Defendants allege that Camp had an unqualified right to compete and therefore he could solicit business away from plaintiff. This argument impermissibly ignores Camp's ongoing duty to plaintiff as the general manager of plaintiff's company. *See McKnight v. Simpson's Beauty Supply, Inc.*, 86 N.C. App. at 453, 358 S.E.2d at 109; *Sara Lee Corp.*, 129 N.C. App. at 470, 500 S.E.2d at 736.

To compete with an employer without consent constitutes a breach of the duty of loyalty. *See Long,* 113 N.C. App. at 604, 439 S.E.2d at 802. When one deliberately acquires an interest adverse to his employer, he has breached his duty of loyalty as well. *Id.* If, as plaintiff alleges, Camp competed while still employed by plaintiff, then Camp was not acting in the legitimate exercise of his own rights. *See Owens,* 330 N.C. at 680, 412 S.E.2d at 644. Rather, Camp acted to gain an advantage for himself at the plaintiff's expense. *Id.* We have already ruled that there is a genuine issue as to whether Camp was competing or merely preparing to compete against plaintiff. Therefore, summary judgment was improper as to Camp on this claim as well.

[7] As to Menius, we hold that the trial court properly granted summary judgment. Plaintiff has presented no evidence that Menius solicited any of plaintiff's business while plaintiff employed her. Additionally, there is no evidence that a covenant not to compete covered Menius. At most, plaintiff showed that Menius prepared to compete prior to leaving plaintiff's employment. *See Fletcher, Barnhardt & White, Inc. v. Matthews,* 100 N.C. App. 436, 397 S.E.2d 81 (1990). Since Menius did not act adversely to plaintiff's interests until after she left his employment, she could freely compete with him. *See Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 222-23, 367 S.E.2d 647, 652 (1988); *Childress v. Ableles,* 240 N.C. 667, 84 S.E.2d 176 (1954). Therefore, summary judgment was proper.

[8] We also hold that the trial court properly granted summary judgment as to MCC. MCC was never more than a competitor of plaintiff. A competitor has the privilege to induce another party not to renew or enter a contract with another. *Id.* This is true as long as the competitor solicits legally and does not gain an advantage unfairly at the other's expense. *Owens,* 330 N.C. at 680, 412 S.E.2d at 644. To hold otherwise would stifle competition. *See Peoples Sec. Life Ins. Co.,* 322 N.C. at 223, 367 S.E.2d at 652. Since MCC's relationship to plaintiff has never been anything but as a competitor, it never owed any

duty to plaintiff. Therefore, MCC could freely compete and solicit plaintiff's customers without penalty.

IV. Conspiracy

[9] Plaintiff next alleges that he has presented sufficient evidence to overcome the motion for summary judgment as to his conspiracy claim. We disagree as to all three defendants.

There is no cause of action for civil conspiracy per se. *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981); *Henderson v. LeBauer*, 101 N.C. App. 255, 260-61, 399 S.E.2d 142, 145, *disc. review denied*, 328 N.C. 731, 404 S.E.2d 868 (1991). However, an action does exist for wrongful acts committed by persons pursuant to a conspiracy. *Id.* This claim requires the showing of an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant. *Id.* Additionally, the claimant must present evidence of an "overt act" committed by at least one conspirator committed in furtherance of the conspiracy. *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. If a party makes this showing, all of the conspirators are jointly and severally liable for the act of any one of them done in furtherance of the agreement. *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987).

A party may establish an action for civil conspiracy by circumstantial evidence, however sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. After careful examination of the record before us, we conclude that plaintiff has not forecast sufficient evidence to present a genuine question of material fact as to conspiracy. Here plaintiff relies on mere conjecture and has shown no facts sufficient to support their allegations of a common agreement and objective. At his deposition, plaintiff testified that he had no evidence that Menius and Camp conspired with one another. He stated that he had nothing more than "suspicion." Accordingly, the trial court properly entered summary judgment for the defendants.

V. Damages

[10] Defendants argue that plaintiff has not forecast evidence of a genuine issue as to his damages. In order to recover, plaintiff must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the damages with a reasonable certainty. *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C.

534, 546, 356 S.E.2d 578, 586, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). Where a party has alleged business losses caused by intentional tortious conduct, the appropriate inquiry is whether the consequences were the natural and probable result of the defendants' conduct and not whether the consequences were within the parties' legal contemplation. *Steffan v. Meiselman*, 223 N.C. 154, 159, 25 S.E.2d 626, 629 (1943). As long as the evidence is not remote or speculative, evidence of anticipated profits is admissible to aid the jury in estimating the extent of the injury sustained and not as the measure of damages. *See id.* at 159, 25 S.E.2d at 629-30. Parties may also show damages by proving the usual profits of a regularly established business prior to the tortious conduct. *Id.*

Taking all inferences in favor of the non-moving party, we conclude that the plaintiff has presented sufficient evidence of damages to survive a motion for summary judgment. Plaintiff's expert witness testified that plaintiff had suffered from eighty five to ninety thousand dollars in losses as the result of defendants' conduct. She based this conclusion on revenues earned by plaintiff prior to the conduct of defendants and on evidence of possible future revenues. We conclude that this evidence is not overly speculative and is sufficient to withstand a motion for summary judgment. *See id.*

Affirmed in part, reversed in part, and remanded.

Judges WALKER and McGEE concur.