MR. AND MRS. P. G. BLANTON v. BARBARA TAYLOR BLANTON

No. 784DC438

(Filed 6 March 1979)

1. **Quasi Contracts and Restitution § 3— nonperformance of oral or simple written contract—action in assumpsit**

  The action of assumpsit is an action for the recovery of damages for the nonperformance of an oral or simple written contract; this contract may be express or implied and may be for the payment of money.

2. **Quasi Contracts and Restitution § 3— special and general assumpsit**

  Ordinarily, only the count of special assumpsit would lie to prove a right of recovery under a written contract whereas in general assumpsit the court, in its equitable powers, will either construct a contract from the facts proved, if sufficient facts are proved (a promise implied in fact), or will impose a contract upon the facts proved where such a contract may be said to exist as a matter of law (a promise implied in law).

3. **Quasi Contracts and Restitution § 5— money lent for use in chicken business — defendant not a partner—no promise implied as matter of law**

   In an action to recover a sum of money allegedly lent by plaintiffs to defendant, who was their former daughter-in-law, for use in a chicken business operated by defendant and her husband, there was no promise implied in the evidence as a matter of law where the evidence did not show that defendant and her former husband were partners in the chicken business, and plaintiffs' contention that any indebtedness incurred for the benefit of the business by one partner would jointly and severally obligate the other partner was therefore inapplicable.

4. **Quasi Contracts and Restitution § 5— money lent for use in chicken business — no promise to repay by defendant**

   In an action to recover a sum of money allegedly lent by plaintiffs to defendant, their former daughter-in-law, for use in a chicken business operated by defendant and her husband, the facts proved would not support the imposition of a contract based upon a promise implied in fact, since there was no evidence of any affirmative undertaking, either oral or written, on the part of defendant to repay the monies supposedly lent to her and her husband, and evidence of silences by defendant, who was physically present at the time some of the transactions were discussed between defendant's husband and the plaintiffs, would not compel a finding of liability based upon acquiescence.

5. **Quasi Contracts and Restitution § 5— money lent for use in chicken business—debts of business assumed in separation agreement—no promise to pay by defendant**

   In an action to recover a sum of money allegedly lent by plaintiffs to defendant, their former daughter-in-law, for use in a chicken business operated by defendant and her former husband, there was no merit to plaintiffs' contention that, because defendant signed a separation agreement in which she agreed to assume the lawful debts of the chicken business, a written contract existed which would require the court to find liability on the part of defendant, since the chicken business was a sole proprietorship, the debts of which would be *in personam* debts of defendant's former husband, and the only debts which defendant would be assuming under the separation agreement would be those encumbrances secured by the physical assets of the chicken business.

   Judge ERWIN concurs in the result.

APPEAL by plaintiffs from *Erwin, Judge*. Judgment entered 7 March 1978 in District Court, DUPLIN County. Heard in the Court of Appeals 9 February 1979.

Plaintiffs brought this civil action 12 August 1975, claiming that defendant owed them $3,496.07 for money lent by the plaintiffs to defendant on or about the 18th day of June 1975. Defendant answered, denying the allegations of the complaint and contending that the complaint failed to state a claim upon which

relief could be granted in that no proof of indebtedness had been attached or alluded to in the complaint. At trial, plaintiff, Annie Mae Blanton, testified that she and her husband took out a loan in 1970 in order to help her son and defendant meet certain payments on prior loans involved with their chicken business. Annie Blanton testified that it was her expectation that the children would make the payments on this loan. However, payments were not made by Bobby and Barbara Blanton in 1971 and 1972, plaintiffs making these payments in both of those years. In 1973, Bobby Blanton took $500 out of the chicken business and made a payment with that money. At this time, Bobby Blanton and defendant were experiencing marital difficulties which culminated in a separation and divorce. In 1975, the plaintiffs made the final payment on this loan. Annie Blanton admitted on cross-examination that the defendant had never told her that she would repay this money, and that furthermore, Barbara Blanton did not execute any promissory note involving the loans in 1970 or 1964 and her signature was not on any of the loan forms. Barbara Blanton did not endorse any of the checks involved in the proceeds of these loans.

Mr. Garland King, the former manager of Duplin Production Credit Association, testified that of his own knowledge he knew that the receipts from the 1970 loan to the plaintiffs were applied to a 1966 loan to Bobby and Barbara Blanton and also to a 1964 loan to the plaintiffs, Mr. and Mrs. P. G. Blanton. He further testified on cross-examination that Barbara Blanton never executed any document indicating that she was in any way responsible for the payment of the 1970 debt and he stated that Production Credit Association looked to Mr. and Mrs. P. G. Blanton for satisfaction of this debt.

Robert Amos (Bobby) Blanton, former husband of defendant, testified that he and his wife were jointly engaged in a chicken business and that the 1970 loan was taken out by his parents at his request owing to difficulties that the chicken business was encountering meeting current debt obligations. Robert Blanton also testified that no payments were made on this loan by him or his wife except for a $500 payment in April of 1973 which he made from the proceeds of the chicken business. Robert Blanton also testified that he separated from his wife on 19 April 1973 and

that he has had nothing further to do with the business since that time.

After hearing this evidence, the trial judge found, among other facts: (1) that during the year 1970 Robert Blanton told Mrs. P. G. Blanton that it appeared that he and the defendant would need to borrow some $3,000 to continue paying their bills; (2) that the plaintiffs secured this loan but that at no time did defendant acknowledge the debt or participate in securing the loan; (3) that the defendant never made any promise to pay this debt at any time after 1970 and specifically during those times when the plaintiffs made the payments on this debt; (4) that the complaint charged that the plaintiffs were due $3,496.07 from the defendant for money lent by the plaintiffs to the defendant on 18 June 1975 but no evidence was presented to support a loan being made by the plaintiffs to defendant in this amount on 18 June 1975. Therefore, the trial court concluded that plaintiffs were not entitled to recover the sum of $3,496.07 from defendant, and that plaintiffs' evidence failed to show any contract between plaintiffs and defendant, either oral or written, on or about 18 June 1975 for this amount. A judgment of involuntary dismissal was entered against plaintiffs, from which they appeal, assigning error.

*Corbett & Fisler, by Robert Hugh Corbett, for the plaintiffs.*

*No appearance by defendant appellee.*

MARTIN (Robert M.), Judge.

Plaintiffs contend that it was error for the trial judge to enter dismissal against them. They argue that they proved sufficient facts to entitle them to recover the monies they purportedly loaned to defendant, characterizing their action as being one in the nature of the common law count of assumpsit; specifically, plaintiffs sought to prove indebitatus assumpsit, a subcategory of the general assumpsit count, and special assumpsit.

[1, 2]   The action of assumpsit is an action for the recovery of damages for the nonperformance of an oral or simple written contract; this contract may be express or implied, and may be for the payment of money. Ordinarily, only the count of special assumpsit would lie to prove a right of recovery under a written contract whereas, in general assumpsit, the court, in its equitable powers,

will either construct a contract from the facts proved, if sufficient facts *are* proved (a promise implied in fact), or will impose a contract upon the facts proved where such a contract may be said to exist as a matter of law (a promise implied in law). At common law, plaintiff would have been required to elect either special or general assumpsit upon which to proceed, the two counts normally not being found to lie on the same set of facts. *See* generally 7 C.J.S. *Assumpsit* §§ 1-9 (1937), 5 Strong's N.C. Index 2d *Money Received* §§ 1-3 (1968). Our present liberal rules of pleading will, however, allow plaintiff to plead both general and special assumpsit without requiring his election of a theory of the case.

In this action, the trial court sat as both judge and jury. Accordingly, the proper scope of our review will be to determine if competent evidence existed to support his findings of fact, and whether he then properly reached his conclusions of law upon those facts. The findings of fact by a trial court in a nonjury trial have the force and effect of a verdict by a jury and are conclusive on appeal if supported by competent evidence, even though the evidence might sustain findings to the contrary. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *Henderson Co. v. Osteen*, 38 N.C. App. 199, 247 S.E. 2d 636 (1978). Accordingly, we will analyze the evidence presented at trial in the light of plaintiffs' theories of the case to determine if the trial judge did, in fact, err.

[3] First, was any promise implied on the evidence as a matter of law? We think not. Plaintiff contended that, since defendant and her husband were both actively engaged in the operation of the chicken business, defendant and her husband were partners, and that any indebtedness incurred for the benefit of the business by one partner would jointly and severally obligate the other partner. While it is true, from the record, that defendant worked in the chicken business, and her name was on a joint checking account which was used for the business, this evidence, standing alone, is not sufficient to support a finding that defendant and her former husband were partners.

> North Carolina has no community property law. The domestic services of a wife, while living with her husband, are presumed to be gratuitous, and the performance of work and labor beyond the scope of her usual household and marital

duties, in the absence of a special contract, is also presumed to be gratuitous. *Smith v. Smith*, 255 N.C. 152, 155-56, 120 S.E. 2d 575, 579 (1961).

No evidence of any "special contract" was adduced to support plaintiffs' allegation of partnership between defendant and her (then current) husband; therefore, the trial judge could properly conclude that there was no partnership. The principles of agency cited by plaintiff accordingly are not applicable and no promise implied in law will be found to lie upon the assumpsit indebitatus count as pleaded.

[4]  Second, will the facts proved support the imposition of a contract based upon a promise implied in fact? Again, we think not. No evidence of any affirmative undertaking, either oral or written, on the part of defendant to repay the monies supposedly lent to her and her husband appears of record. The evidence clearly shows that the loans were negotiated between Bobby Blanton and his parents (the plaintiffs in this action) without any participation by defendant at all. Her signature does not appear on any documents or negotiable instruments drawn by reason of the loan transactions. The only evidence by which plaintiffs seek to make defendant liable on this debt consists of testimony of defendant's ex-husband as to certain statements and silences by defendant, who was physically present at the time some of the transactions were discussed between Bobby Blanton and plaintiffs. While these statements are perhaps sufficient to raise inferences that defendant acquiesced in the transactions, they do not compel a finding of liability based upon acquiescence. The inference will permit, but does not compel, the finding based upon it. *See Cogdell v. R.R.*, 132 N.C. 852, 44 S.E. 618 (1903); 2 Stansbury N.C. Evidence (Brandis Rev.) § 215 (1973). The trial judge's conclusions will not, therefore, be disturbed and the assignments of error are overruled.

[5]  And last, was there evidence which would require the trial court to render judgment for plaintiffs on the allegations amounting to a count of special assumpsit? We think not. Plaintiffs have vigorously contended that, because defendant signed a separation agreement in which she agreed to assume the lawful debts of the chicken business, a written contract existed which would require the court to find liability on the part of defendant. However, since

the chicken business was a sole proprietorship, not operated in any corporate or partnership form, debts of the business would actually be *in personam* debts of Bobby Blanton, and the only debts which defendant would be assuming under the separation agreement would be those encumbrances secured by the physical assets of the chicken business. As we do not find that the business was a partnership, for the reasons stated above, no liability for this debt may be found to have attached to defendant by reason of the separation agreement. These assignments of error are overruled.

We have carefully considered the remaining assignments of error by plaintiffs and find them to be without merit. Plaintiffs were required to carry the burden of proof on the existence of facts which would warrant the equitable imposition of a contract by the court in general assumpsit, as well as on the existence of a contract to support recovery on special assumpsit. Having failed to meet either burden, plaintiffs are left with a well-pleaded but deficient cause of action on all counts, and the trial judge correctly determined that dismissal would lie against them. The judgment of the trial court is affirmed.

Affirmed.

Judge MITCHELL concurs.

Judge ERWIN concurs in the result.