**RADIO TV REPORTS, INC., Plaintiff,**

v.

**Paul INGERSOLL, Defendant.**

**Civ. A. No. 86–2852 SSH.**

United States District Court,
District of Columbia.

July 25, 1990.

---

Joseph John Zimmerman, Washington, D.C., for plaintiff.

John Perazich, Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

On August 14, 1989, the Court granted plaintiff's motion for partial summary judgment as to Counts II and VII of the complaint, holding that defendant both breached his duty of loyalty owed to plaintiff, his employer, and misappropriated property belonging to plaintiff. On February 5, 1990, three days before trial, plaintiff moved to dismiss Counts I, III, IV, V, and VI, on grounds that the legal issues raised in these counts were redundant. The Court granted plaintiff's motion, and a bench trial was held on February 8, 1990, to determine damages as to Counts II and VII.

### Findings of Fact

1. Plaintiff Radio TV Reports (RTV) is a New York corporation in the business of recording, transcribing, and monitoring radio and video programming for its clients.

2. Defendant Paul Ingersoll was employed by RTV from 1965 until August 31, 1986. From 1981 through his August 31, 1986, retirement date, defendant served as manager of RTV's Washington, D.C. office.

3. Robert E. Lee has been employed by RTV's Washington, D.C. branch since 1969. On September 1, 1986, he became the branch manager and is currently so employed. His duties include supervision of staff, execution of contracts, and general office supervision. As such, he is familiar with RTV's fixed costs and overhead.

4. From 1969 through 1986, Lee performed services pursuant to media monitoring contracts procured from the United States Department of Defense (DOD). During that time period, RTV had procured the DOD contract every year, with the exception of one year.

5. In 1981, RTV, under defendant's management, bid on and won a DOD contract for providing audio and video tapes of news broadcasts. RTV performed satisfactorily under that contract from 1981 through August 1986.

6. In July 1986, the DOD solicited bids for a new media services contract for the period October 1, 1986, through September 30, 1987, with options for four subsequent years. The new contract required that the contractor provide, among other services, (1) verbatim recording of news broadcasts on nine radio stations and twelve television stations, 24 hours a day, (2) publication of a daily newsletter based on significant news items of interest to DOD, taken from the nine radio stations and twelve television stations above, and (3) typewritten verbatim transcripts of news broadcasts identified and requested by DOD.[1]

7. During July and August 1986, defendant decided to form his own media monitoring business under the trade name Transmedia. Transmedia was wholly owned by the defendant.

8. On August 29, 1986, RTV submitted its bid for the DOD contract. Lee had taken the handwritten figures from Plaintiff's Exhibit 1 and typed them in at defendant's direction. He had then delivered it to the DOD.[2]

---

1. The requirements for the four option years were the same. The option to extend the contract beyond September 30, 1987, belonged to the DOD.

2. Although plaintiff did not introduce into evi-

9. RTV and Transmedia submitted the only two bids to the DOD. Defendant was fully aware that RTV was bidding on the contract, and consequently, that if Transmedia won the contract, RTV would lose it.

10. Transmedia did, in fact, win the contract, and performed services under it until June 1987, when Transmedia went out of business. RTV offered a new bid for the contract in May 1987. *See* Plaintiff's Exhibit 2. RTV won the contract, and performed services under it from June 2, 1987, to September 30, 1987.[3] Thereafter, the DOD issued five succeeding purchase orders to the plaintiff, obligating plaintiff to continue providing services during the period October 1, 1987 through September 30, 1988.[4] *See* Plaintiff's Exhibits 3–7.

11. On August 9, 1988, the DOD again requested bids on a media monitoring contract. RTV bid on and won the contract for the period October 1, 1988 to September 30, 1989, with two option years.[5] *See* Plaintiff's Exhibit 8.

12. On October 1, 1989, the DOD exercised its first option to extend the term of the latest contract through September 30, 1990. *See* Plaintiff's Exhibit 9. Plaintiff is currently performing media monitoring services under this contract.

13. Plaintiff's expert witness, Oscar Lurie, testified as to his calculation of damages in the case, including his computation of interest. He offered no opinion as to the accuracy of the underlying data used in his calculations, and he assumed that the services performed or to be performed under all contracts from June 1987 through September 1991, were or would be identical.

14. The parties stipulated that defendant received from RTV the sum of $2,270 as salary for the month of August 1986.

15. The parties stipulated that the property belonging to RTV which was misappropriated by the defendant had a value of $725 as of September 1, 1986, the date when defendant was no longer employed by RTV.

*Conclusions of Law*

■ Defendant breached the duty of loyalty owed to plaintiff, his employer, when, on August 29, 1986, he bid on the 1986 DOD media monitoring contract. *See Maryland Metals v. Metzner*, 282 Md. 31, 382 A.2d 564, 568 (1978). Had defendant not breached his duty of loyalty and bid on the contract, plaintiff would have been awarded the contract. Defendant is therefore

---

dence a copy of the typed bid that was submitted to DOD, Lee's testimony that he submitted a bid was credible, and was corroborated by defendant's own testimony. Moreover, it only stands to reason that plaintiff would have submitted a bid, since plaintiff had previously held the contract with the DOD, its largest client in Washington, D.C.

3. The new contract required the contractor to provide services which included verbatim recording of news broadcasts on only five radio stations and nine television stations.

Although plaintiff did not introduce into evidence any purchase order issued by DOD as a result of its quotation, the Court found Lee's testimony that RTV had a contract with the DOD from June through September 1987 to be credible, especially in light of the five subsequent purchase orders which plaintiff did introduce at trial. *See* Plaintiff's Exhibits 3–7.

4. The newsletter requirement under each of the five purchase orders differed from the requirements set forth in the two preceding contracts.

These orders required that the newsletter be based only on morning news broadcasts or interview programs from the three major networks, rather than on nine radio stations and twelve television stations, 24 hours a day.

5. The newsletter requirement under this contract differed from any of the preceding newsletters, in that the contractor was required only to publish news from evening broadcasts of the three major networks.

Although at trial plaintiff merely introduced the bid it submitted to the DOD, and did not provide a copy of the contract executed by the DOD, the Court found Lee's testimony that DOD accepted RTV's bid and executed a contract not only to be credible, but also to be the only possible scenario under the circumstances.

However, Lee did testify that, although the cumulative figures were identical, some of the line item prices found in Plaintiff's Exhibit 8 differed from the prices found in the actual contract. But, again, the Court does not have the benefit of comparing the contract because plaintiff did not introduce it at trial.

liable for the harm to plaintiff caused by the breach.[6]

■ Plaintiff contends that it is entitled to recover lost profits for the period September 1, 1986 through May 1987, the period during which Transmedia held the DOD contract. Plaintiff argues further that had plaintiff been awarded the 1986 contract, DOD would have exercised all options available under the contract, remitting payment to plaintiff on the basis of the figures set forth in the bid plaintiff submitted. Because those figures were higher than the sums plaintiff actually received or will receive from the time it regained the contract in June 1987 through September 1991, plaintiff contends that it is entitled to recover the difference.

Under Maryland law, a plaintiff may recover lost profits for a breach of contract if (1) defendant's breach was the cause of the loss, (2) defendant could have reasonably foreseen when the contract was made that a breach would probably result in a loss of profits, and (3) the lost profits can be proven with reasonable certainty. *Macke Company v. Pizza of Gaithersburg*, 259 Md. 479, 270 A.2d 645, 650 (1970); *M & R Contractors & Builders v. Michael*, 215 Md. 340, 138 A.2d 350, 353, 355 (1958).[7] Because plaintiff has shown that defendant was the cause of the loss and that the loss was reasonably foreseeable, the question before the Court is whether plaintiff has met its burden of proving its lost profits with reasonable certainty.

In support of its damage claim, plaintiff at trial introduced a copy of a draft of the bid it claims to have ultimately submitted to the DOD on August 29, 1986. Plaintiff's Exhibit 1. Plaintiff did not introduce a copy of the actual bid as it was submitted to DOD, but rather, based its damage claim on the handwritten figures on the copy of the draft.

The adverse inference rule states "that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to [that party]." *International Union (UAW) v. National Labor Relations Board*, 459 F.2d 1329, 1336 (D.C.Cir.1972). Plaintiff's manager, Lee, stated that in his haste to deliver the bid to DOD, he neglected to make a copy of it. He furthermore testified that RTV never received an executed copy from DOD, because DOD did not accept their bid and award them the contract. Although these explanations are plausible, Lee then admitted on cross-examination that RTV had obtained a copy of the bid from the DOD through the Freedom of Information Act (FOIA), but that RTV did not have the copy available for the trial. Plaintiff provided no further explanation for the document's absence, despite acknowledging its availability through the FOIA.

Without a copy of the bid itself or at least an adequate explanation for its absence, the Court will infer that the document would not have supported plaintiff's calculation of damages. Although Lee testified that the handwritten figures in Plaintiff's Exhibit 1 were identical to those submitted as a final bid, he certainly could not recall the exact figures. Furthermore, the draft copy plaintiff introduced was incomplete. Thus, Lee's self-serving statement that the figures are identical is not enough to overcome the adverse inference that, had the actual bid supported plaintiff's claim, plaintiff would have introduced it at trial.[8]

---

6. Also, "'[i]f an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal.'" *Miller Building Supply, Inc. v. Rosen*, 305 Md. 341, 503 A.2d 1344, 1348 (1986) (citing Restatement (Second) of Agency § 403). However, in this case, defendant did not earn any profits under the 1986 DOD contract, but rather operated in the red for the nine-month period during which he held the contract. *See* Defendant's Exhibits 7–10.

7. When an agent breaches his duty of loyalty owed to the principal, he breaches his contract, *see Maryland Metals*, 382 A.2d at 568, and the principal is entitled to recover damages in accordance with the principles of contract law. *See also Restatement (2d) Agency*, § 400.

8. The figures set forth in Plaintiff's Exhibit 1 are also speculative by their very nature. That is, plaintiff based its prices on estimated quantities used solely for bid evaluation purposes, without any indication that the DOD was obligated to

There is no question, however, that plaintiff lost profits from September 1986 through May 1987, when it was without a DOD contract. For services provided for the period June 1987 through September 1987, plaintiff received $20,594.04, for an average of $5,148.51 per month. *See* Plaintiff's Exhibit 11. Based on this average, had plaintiff received the contract for the first eight months, it would have received $41,188.08. Taking plaintiff's representation that it avoided costs in the amount of $3,520 per month from October through May, *see* Plaintiff's Exhibit 15, plaintiff's lost profits for that period would total $13,028.08.

Plaintiff would also ask the Court to award lost profits for the period June 1987 through September 1991, based on the argument that had defendant not committed his breach, plaintiff would have received revenues as set forth in Plaintiff's Exhibit 1. Because these revenues were higher than those plaintiff actually received or expects to receive based on the contracts actually executed or expected to be executed, plaintiff argues that it is entitled to recover the difference. However, plaintiff again relies on the handwritten figures of its bid draft to compute these damages, and the Court has held that it will not award damages based on this document.

Moreover, plaintiff did not present evidence that the DOD would have exercised its options under the October 1986 contract, had plaintiff been awarded the contract in the first place. Although Lee testified that the DOD had exercised options in contracts with RTV previously, this again is a self-serving statement, without corroboration from, for example, a contracting officer at the DOD. Furthermore, even if plaintiff had shown that the DOD would have exercised all four options under the 1986 contract, it has not shown what increased costs plaintiff would have incurred as a result. Plaintiff argues that the costs would have been the same under the option contracts as they were under the subsequent purchase orders and contracts, because the services provided would have

been identical. Plaintiff's own documentary evidence, however, contradicts plaintiff's assertion, and shows differences in the services to be provided under the October 1986 contract and its options, the June 1987 contract, the five purchase orders, and the October 1988 contract. *See supra* Paragraph 6 and notes 3, 4, & 5. Thus, the Court concludes that the services were not identical and, therefore, plaintiff should have considered the costs it avoided by not receiving the October 1986 contract. Plaintiff could have provided reasonable estimates of these costs, but did not do so.

Because no compensation is owed to an employee who has breached his duty of loyalty to his employer, plaintiff is entitled to receive compensation in the amount of $2,270, the amount to which the parties stipulated was defendant's compensation for the month of August 1986, the date of the breach. *See, e.g., Maryland Credit Corp. v. Hagerty*, 216 Md. 83, 139 A.2d 230 (1958).

The measure of damages for property converted by defendant is the value of the property as of the date of conversion, with interest to the date of the verdict. *See Saunders v. Mullinix*, 195 Md. 235, 72 A.2d 720, 722 (1950). The parties have stipulated that the value of the property defendant misappropriated was $725 on September 1, 1986, the date on which defendant was no longer in plaintiff's employ, *i.e.*, the date of the conversion. Therefore, plaintiff is entitled to recover $725 with interest to the date of the verdict. An appropriate Order accompanies this Opinion.

SO ORDERED.

### ORDER

Upon consideration of the evidence introduced at the bench trial on February 8, 1990, the parties' proposed findings of fact and conclusions of law, and the entire record herein, for the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that judgment is entered for plaintiff in the amount of $15,298.08, and in

purchase any minimum amount. *See* Plaintiff's Exhibit 1, p. 5.

the amount of $725 plus interest from September 1, 1986, to the date of this Order.

SO ORDERED.