SARA LEE CORPORATION, Plaintiff v. STEPHEN DOWELL CARTER, Defendant

No. COA97-709

(Filed 19 May 1998)

1. **Labor and Employment § 239 (NCI4th); Principal and Agent § 17 (NCI4th)— purchasing agent—purchases from own companies—breach of fiduciary duty**

   The evidence supported the trial court's determination that defendant sold computer parts from his own companies to his employer without a good faith disclosure to the employer of all material facts surrounding the transactions and that defendant thereby breached his fiduciary duty to his employer.

2. **Fraud, Deceit, and Misrepresentation § 41 (NCI4th)— purchasing agent—fraudulent purchases from own companies**

   The evidence supported the trial court's determination that defendant perpetrated a fraud on his employer by selling computer parts to his employer without disclosing his interest in the companies supplying those parts.

3. **Labor and Employment § 239 (NCI4th); Principal and Agent § 17 (NCI4th)— employee's breach of fiduciary duty—damages—compensation and benefits**

   Where the evidence supported the trial court's finding that defendant was continuously engaged in fraud and breach of fiduciary duty throughout the time that he was employed by plaintiff, the trial court properly awarded damages to plaintiff in the total amount of the compensation and benefits received by defendant pursuant to his employment with plaintiff.

4. **Workers' Compensation § 365 (NCI4th)— compensation benefits—constructive trust not permitted**

   The language in N.C.G.S. § 97-21 exempting workers' compensation benefits from "all claims" prohibited the trial court

SARA LEE CORP. v. CARTER

[129 N.C. App. 464 (1998)]

from imposing a constructive trust on workers' compensation benefits received by defendant employee for a work-related injury based upon defendant's breach of fiduciary duty and fraud toward plaintiff employer.

**5. Unfair Competition or Trade Practices § 6 (NCI4th)— employee's breach of fiduciary duty—not unfair trade practice**

An employee's fraud and breach of fiduciary duty toward his employer did not constitute an unfair or deceptive act or practice within the purview of N.C.G.S. § 75-1.1, and the employer could not recover treble damages or attorney fees under Ch. 75.

**6. Costs § 38 (NCI4th)— bank fees—improper assessment as costs**

The trial court erred by assessing as costs against defendant employee in plaintiff employer's action for breach of fiduciary duty the fees charged by a bank to assemble records and provide testimony pursuant to a subpoena. N.C.G.S. § 7A-305.

**7. Costs § 44 (NCI4th)— mediator's fee—assessment as costs**

The trial court did not err by assessing a mediator's fee as costs against the nonprevailing defendant employee in plaintiff employer's action for breach of fiduciary duty since the language "other similar court appointees" in N.C.G.S. § 7A-305(d)(7) includes court-appointed mediators.

Appeal by defendant from judgment filed 12 December 1996 and order dated 27 November 1996 by Judge Judson D. DeRamus, Jr., and order entered 30 July 1996 by Judge William H. Freeman, and order filed 7 June 1996 by Judge R.G. Walker, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 24 February 1998.

*Kilpatrick Stockton, LLP, by Daniel R. Taylor, Jr., Louis W. Doherty and W. Mark Conger, for plaintiff appellee.*

*Elliot, Pishko, Gelbin & Morgan, P.A., by David C. Pishko and J. Griffin Morgan, for defendant appellant.*

GREENE, Judge.

Stephen Dowell Carter (Defendant) appeals from the judgment and orders of the trial court awarding damages to Sara Lee

**SARA LEE CORP. v. CARTER**

[129 N.C. App. 464 (1998)]

Corporation (Sara Lee) for breach of fiduciary duty, fraud, and unfair and deceptive trade practices.

Defendant testified that he first started servicing computers for Sara Lee on behalf of ComputerLand, where he was an employee through (approximately) the end of 1988. In January of 1989, Defendant was hired by Eugene Cain (Cain), a supervisor at Sara Lee, to service computers for Sara Lee in his individual capacity. Defendant stated that Cain and he "talked about me becoming an employee of Sara Lee and forming a partnership," C Square Computer Consulting (C Square), to perform computer servicing for Sara Lee. Cain and Defendant were to split any C Square profits evenly. Defendant testified that his employment with Sara Lee was conditioned by Cain on the formation of C Square. Defendant further testified that part of his job at Sara Lee was to order replacement parts when employees contacted him and reported computer failures. Defendant stated that he often obtained these replacements from his own stock of parts. Defendant also testified that he entered into an agreement with Craig Garwood (Garwood) to supply parts to Sara Lee through a company called PC Technologies and split the profits evenly. In addition, Defendant testified that he individually owned a company called Computer Care, through which he supplied Sara Lee with computer parts and services, and that he and his brother formed a business called Micro Computer Services, which also did work for Sara Lee.

Defendant also alleged that, on 8 July 1992, during his employment with Sara Lee, he suffered a work-related accidental injury. Defendant has drawn workers' compensation benefits since that time. As of the date that this appeal was orally argued, the North Carolina Industrial Commission had not issued a ruling resolving the issues surrounding payment of workers' compensation benefits to Defendant.

Cain testified that he and Defendant formed C Square in November of 1988, while Defendant was still an employee of ComputerLand, to service Sara Lee's existing and new computer hardware. Cain testified that C Square had no employees. Defendant set the prices charged by C Square for parts, and Defendant and Cain together determined service charges. Cain was aware that Defendant continued to perform work for Sara Lee through C Square after beginning his employment with Sara Lee. In early 1990, Cain was transferred to Puerto Rico, and he and Defendant agreed to end their C

Square partnership. Cain understood that C Square would cease doing business with Sara Lee at that time. Cain testified that, due to Defendant's threats, he was concerned that Defendant would report his involvement in the partnership to Sara Lee management, thereby endangering Cain's imminent transfer. Cain stated that he never obtained permission to deal on Sara Lee's behalf with any company in which either he or Defendant had an interest.

Harold Garrison (Garrison), Cain's supervisor, testified that he was not informed by either Defendant or Cain about their business partnership, C Square, or that Sara Lee was doing business with any entity in which either Defendant or Cain had an interest. About six months into Defendant's employment, Garrison became Defendant's immediate supervisor and Defendant reported directly to Garrison rather than to Cain. Garrison stated that he relied on Defendant to "select [computer] parts for the most reasonable price that was available," and that Defendant had "complete authority to buy computer parts on behalf of Sara Lee from whomever he chose." Garrison testified that Defendant never made him aware of any financial interest he had in the entities from which he purchased computer parts and services on Sara Lee's behalf.

Garwood testified that approximately one year after Defendant left ComputerLand and began working for Sara Lee, Defendant approached him about forming PC Technologies "so that we could sell parts to Sara Lee." PC Technologies had no office or employees. Defendant set the price to be charged to Sara Lee for parts and services. Defendant and Garwood split all profits generated by this arrangement equally.

During 1991, Sara Lee began a "Time and Attendance Project" (the Project) to automate the collection of payroll data. In connection with the Project, Defendant suggested that Sara Lee hire PC Technologies to install the necessary computer coaxial cabling in Sara Lee plants. Defendant represented to his superiors that PC Technologies had experience installing coaxial cables. Defendant did not indicate that he was receiving any financial payment from PC Technologies. Sara Lee paid PC Technologies roughly $80,000.00 to install the cabling for the Project.

Donald Wendt (Wendt), Defendant's neighbor from approximately 1986 until 1994, testified that Defendant approached him and offered him the job of installing cable in the Sara Lee plants for $500.00 per plant. Wendt had no previous experience installing cable.

SARA LEE CORP. v. CARTER

[129 N.C. App. 464 (1998)]

Wendt understood that he was working for Defendant, and had no knowledge of PC Technologies. Wendt installed cable in various Sara Lee plants with Defendant's brother. Defendant paid Wendt a total of approximately $9,000.00 for installing cable in seventeen or eighteen Sara Lee plants. Wendt testified that he and Defendant's brother completed each cabling job.

Defendant's brother testified that he was hired by Defendant to work with Wendt to install cable at Sara Lee plants for $1,000.00 per plant. Defendant's brother ultimately received a total of approximately $20,000.00 for his cabling work. Defendant's brother testified that he reported to Defendant, and had no knowledge of a company called PC Technologies.

The evidence revealed that as Sara Lee employees became suspicious of PC Technologies due to difficulties in contacting the company, Defendant continually reassured his superiors that he was in contact with PC Technologies and would take care of any problems. When Sara Lee employees suggested that PC Technologies be replaced on the Project, Defendant told them he was concerned that Sara Lee would be breaching its contract with PC Technologies. No contract with PC Technologies was on record, however, with Sara Lee. At no time did Defendant reveal that he had a financial interest in PC Technologies.

Sara Lee discharged Defendant on 25 September 1992 as a result of its investigation into his transactions. The evidence revealed that during his employment, Sara Lee paid Defendant $170,812.79 in compensation and benefits (excluding workers' compensation benefits). In addition, the total amount paid by Sara Lee to C Square was $46,720.10. The total amount paid by Sara Lee to Micro Computer Services was $36,191.65. The total amount paid by Sara Lee to PC Technologies, including payment for work on the Project, was $373,294.94. Sara Lee paid Computer Care $39,224.85. All of these payments were made during Defendant's employment with Sara Lee.

The trial court found "[Defendant's] testimony to be not worthy of belief on almost every relevant issue." The trial court further found as fact the following: Defendant's "supervisors trusted [Defendant] implicitly with the ordering and the purchasing of computer parts and trusted him to obtain those parts at the lowest possible prices"; Defendant, while employed by Sara Lee, performed work and supplied parts to Sara Lee under various company names, including C Square, PC Technologies, Micro Computer Services, and Computer

Care; Defendant did not disclose his interests in any of these companies to his superiors at Sara Lee; and Defendant knew that Cain was in breach of his fiduciary duty to Sara Lee by his involvement in C Square "and knew that he was assisting and participating with [Cain] in that breach." The trial court further found that the "egregious breach" involving the transactions between Sara Lee and Defendant's companies affected commerce, and thereby constituted unfair and deceptive trade practices.

The trial court concluded that Defendant owed Sara Lee a fiduciary duty "with respect to his role in recommending the purchase of and actually ordering and purchasing computer parts, accessories and related services, including cabling services," that "[d]uring and throughout the period that [Defendant] was actively employed at Sara Lee, he was engaged continuously in this fraud and breach of fiduciary duty," and that Sara Lee reasonably relied on Defendant to purchase computer parts and services. Finally, the trial court concluded that "the workers' compensation benefits . . . were obtained by [Defendant] directly as a result of his fraudulent relationship with [Sara Lee] and should be held in constructive trust for the benefit of [Sara Lee]."

The trial court entered judgment against Defendant awarding Sara Lee $322,729.20 for Defendant's breach of fiduciary duty and fraud, which the trial court considered as unfair and deceptive trade practices and therefore trebled; an additional $170,036.30 for Defendant's salary and benefits while a Sara Lee employee which the trial court likewise trebled; and prejudgment interest on these amounts. The trial court, due to Defendant's "unwarranted refusal . . . to fully resolve" his unfair and deceptive trade practices, ordered Defendant to pay Sara Lee's attorneys' fees. The trial court also ordered Defendant to pay as costs "$394.50 for fees assessed by Community Bank to assemble records and appear and testify pursuant to subpoena," and $250.00 for Sara Lee's portion of the mediator's fee for a court-ordered mediation.

---

The issues are whether: (I) Defendant breached a fiduciary duty owed to Sara Lee; (II) Defendant perpetrated a fraud on Sara Lee; (III) Sara Lee may recover Defendant's compensation as damages; (IV) a constructive trust may be imposed on Defendant's workers' compensation benefits; (V) Defendant engaged in unfair and deceptive trade practices; and (VI) mediation expenses and record assembly expenses are assessable costs.

A trial court's findings of fact must support its conclusions of law. *Blanton v. Blanton*, 40 N.C. App. 221, 225, 252 S.E.2d 530, 533 (1979). Where a trial court sits as both judge and jury, as it did in this case, its findings are conclusive on appeal where they are supported by competent evidence, notwithstanding conflicting evidence in the record. *Id.*

I

**[1]** "An agent is one who, by the authority of another, undertakes to transact some business . . . on account of such other, and to render an account of it. He is . . . appointed by his principal primarily to bring about business relations between the latter and third persons." *SNML Corp. v. Bank*, 41 N.C. App. 28, 36, 254 S.E.2d 274, 279 (citing 2A C.J.S. *Agency* § 4, at 554 (1972)), *disc. review denied*, 298 N.C. 204, —— S.E.2d —— (1979). Furthermore, an agent "is a fiduciary concerning the matters within the scope of his agency." *Id.* at 37, 254 S.E.2d at 280. Indeed, the "very relation implies that the principal has placed trust or confidence in the agent, and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer." *Id.*

In this case, competent evidence reveals, and the trial court found, that Defendant had discretion to obtain computer parts and services "from whatever source he thought best," and Defendant's supervisors "trusted [Defendant] implicitly with the ordering and the purchasing of computer parts and trusted him to obtain those parts at the lowest possible prices." These findings support the trial court's conclusions that Defendant was an agent authorized by Sara Lee to bring about business transactions between Sara Lee and computer parts suppliers, and that Defendant owed Sara Lee a fiduciary duty in carrying out these responsibilities.

An agent "can neither purchase from nor sell to the principal" unless the agent, in good faith, fully discloses to the principal all material facts surrounding the transaction, and the principal consents to the transaction. *See Spence v. Spaulding and Perkins, Ltd.*, 82 N.C. App. 665, 667, 347 S.E.2d 864, 866 (1986) ("In selling to itself, the defendant attempted to act in the double capacity of agent and purchaser—a combination so incompatible and noxious to the fundamental rule of loyalty demanded of an agent to his principal, acting as a fiduciary, as to be intolerable to public policy."); *see also Real Estate Exchange & Investors v. Tongue*, 17 N.C. App. 575, 576, 194

S.E.2d 873, 874 (1973) (applying this general rule regardless of the fairness of the price paid).

In this case, the evidence reveals and the trial court found that while employed by Sara Lee, Defendant acted in the double capacity of both purchasing agent and vendor, and thereby brought about transactions between Sara Lee and his own companies. These transactions resulted in payments to Defendant's companies of over $495,000.00; the trial court found $322,729.20 of this amount to be profit. The evidence further reveals, and the trial court found, that Defendant did not disclose his interest in any of these companies to his superiors at Sara Lee. Defendant contends that disclosing his interest in C Square to Cain was sufficient to satisfy his fiduciary duty; however, the trial court found that Defendant knew that Cain was likewise breaching his duties to Sara Lee through his C Square dealings. Furthermore, Defendant only reported directly to Cain for a few months; thereafter, Defendant worked for other supervisors, and Cain was transferred to Puerto Rico before ultimately leaving Sara Lee. Defendant did not disclose his interests in the companies supplying Sara Lee to any of his subsequent supervisors. It follows that the trial court properly determined that Defendant sold computer parts from his own companies to Sara Lee absent good faith full disclosure to Sara Lee of all material facts surrounding the transactions, and that Defendant thereby breached his fiduciary duty to Sara Lee.

II

[2] When property is transferred between a fiduciary and his principal, fraud is presumed. *See, e.g.,* *Sanders v. Spaulding and Perkins, Ltd.,* 82 N.C. App. 680, 681, 347 S.E.2d 866, 867 (1986); *Spence,* 82 N.C. App. at 667, 347 S.E.2d at 866; *Stone v. McClam,* 42 N.C. App. 393, 400, 257 S.E.2d 78, 83 ("[W]here a transferee of property stands in a confidential or fiduciary relationship to the transferor, it is the duty of the transferee to exercise the utmost good faith in the transaction and to disclose to the transferor all material facts relating thereto and his failure to do so constitutes fraud."), *disc. review denied,* 298 N.C. 572, 261 S.E.2d 128 (1979).

Having determined that competent evidence supports the trial court's findings and its findings support the conclusion that Defendant breached his fiduciary duty by selling computer parts to Sara Lee without disclosing his interest in the companies supplying these parts, we must likewise hold that competent evidence supports

the trial court's findings and its findings support the conclusion that Defendant perpetrated a fraud on Sara Lee.

## III

**[3]** "[W]hen an agent, in a fiduciary relation, is guilty of disloyalty to his principal and when by virtue of his position he seeks to make profit to himself rather than promote the interest of his principal, he is not entitled to compensation." *Cotton Mills v. Manufacturing Co.*, 221 N.C. 500, 509, 20 S.E.2d 818, 823 (1942); *see generally* 3 Am. Jur. 2d *Agency* §§ 258-59 (1986) (employer may recover compensation paid to agent who acted fraudulently or in breach of duty). Where an agent's breach of fiduciary duty may be traced to specific periods or assignments, and the agent performed other assignments properly, several jurisdictions allow recovery of only the compensation received for periods or assignments affected by the breach. *See, e.g., Musico v. Champion Credit Corp.*, 764 F.2d 102 (2d Cir. 1985) (where breach of duty does not taint all dealings between the parties, compensation should be apportioned so that only the periods affected by the breach are recoverable); *Radio TV Reports, Inc. v. Ingersoll*, 742 F. Supp. 19 (D. D.C. 1990) (allowing recovery of compensation only for the month during which the breach of fiduciary duty occurred).

In this case, the trial court found that "[d]uring and throughout the period that [Defendant] was actively employed at Sara Lee, he was engaged continuously in this fraud and breach of fiduciary duty." This finding is supported by competent evidence in the record revealing transaction dates throughout Defendant's employment with Sara Lee. Defendant's continuous breach of fiduciary duty does not allow for apportionment; therefore the trial court properly awarded damages to Sara Lee in the total amount of the compensation and benefits received by Defendant pursuant to his employment.

## IV

**[4]** Under our Workers' Compensation Act (the Act), workers' compensation benefits are not assignable, and "all compensation and claims therefor shall be exempt from all claims of creditors . . . ." N.C.G.S. § 97-21 (Supp. 1997); *cf. Williams v. Williams*, 255 N.C. 315, 318, 121 S.E.2d 536, 538 (1961) (affirming the trial court's refusal to impose a constructive trust on Veterans' Administration benefits, which "shall be exempt from the claim of creditors"). While we have held that a trial court may consider a party's workers' compensation

SARA LEE CORP. v. CARTER

[129 N.C. App. 464 (1998)]

benefits as income when determining that party's child support obligation, *State v. Miller*, 77 N.C. App. 436, 438-39, 335 S.E.2d 187, 188-89 (1985) (noting that a child support obligation is not a debt, and one of the main purposes of the Act is to help sustain the dependents of employees disabled at work), the plain language of section 97-21, exempting workers' compensation benefits from "all claims," forbids the imposition of a constructive trust on workers' compensation benefits. *See Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (noting that where a statute is clear and unambiguous, there is no room for judicial construction, and "the statute must be given effect in accordance with its plain and definite meaning"). We therefore vacate the trial court's imposition of a constructive trust on Defendant's workers' compensation benefits.

V

**[5]** Chapter 75 of the North Carolina General Statutes (Chapter 75) declares "unfair or deceptive acts or practices in or affecting commerce" to be unlawful. N.C.G.S. § 75-1.1 (1994). While Chapter 75 protects both businesses and consumers, *McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 683, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988), "employer-employee relationships do not fall within [its] intended scope," *Buie v. Daniel International*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). "The policy behind this statutory construction is that '[e]mployment practices fall within the purview of other statutes adopted for that express purpose.'" *Johnson v. First Union Corp.*, 128 N.C. App. 450, 458, 496 S.E.2d 1, 6 (1998) (quoting *Buie*, 56 N.C. App. at 448, 289 S.E.2d at 120).

In this case, Defendant's conduct primarily occurred during his employment with Sara Lee. Indeed, it was Defendant's employment relationship with Sara Lee which placed him in a position of trust enabling him to engage in the fraudulent transactions at issue. It follows that Defendant's conduct is not within the scope of Chapter 75. We therefore vacate those portions of the trial court's judgment which trebled Sara Lee's damages pursuant to Chapter 75. We likewise vacate the portion of the trial court's judgment awarding Sara Lee attorneys' fees pursuant to Chapter 75. *See* N.C.G.S. § 75-16.1 (1994) (allowing for an award of the prevailing party's attorneys' fees where the complaint alleges a violation of section 75-1.1).

## VI

Section 6-19 of the North Carolina General Statutes *requires* the trial court to award assessable costs "to the defendant, in the actions mentioned in the preceding section [6-18] unless the plaintiff be entitled to costs therein." N.C.G.S. § 6-19 (1997). Section 6-20 *permits* the trial court, in its discretion, to award assessable costs in actions not enumerated in section 6-18. N.C.G.S. § 6-20 (1997).

As this case is not a section 6-18 action, the trial court had the discretion to award assessable costs, but was not required to do so.

## A

[6] The "complete and exclusive" listing of assessable costs is set forth in Article 28. N.C.G.S. § 7A-320 (1995). Section 7A-305, contained within Article 28, specifically enumerates the costs to be assessed in civil actions. N.C.G.S. § 7A-305 (1995). In addition to these specifically enumerated costs, the trial court is to assess "costs as provided by law." N.C.G.S. § 7A-305(e). This Court, prior to the passage of section 7A-320 (which made the costs enumerated in Article 28 "complete and exclusive"), held that deposition expenses are assessable costs. *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 286, 296 S.E.2d 512, 516 (1982). It follows that deposition expenses are "costs as provided by [case] law"; therefore the passage of section 7A-320 did not preclude the assessment of deposition expenses as costs by the trial court. *See Alsup v. Pitman*, 98 N.C. App. 389, 391, 390 S.E.2d 750, 752 (1990). The trial court may not, however, assess as costs any expenses which are neither enumerated within Article 28 nor "provided by law." *See, e.g., Sealey v. Grine*, 115 N.C. App. 343, 348, 444 S.E.2d 632, 635 (1994) (disallowing an award of costs for "copies of x-ray films . . . and records" because these expenses did not relate to depositions and were not enumerated costs under section 7A-305); *Wade v. Wade*, 72 N.C. App. 372, 384, 325 S.E.2d 260, 271 (disallowing an award of costs for appraisal fees because "[c]osts are awarded only pursuant to statutory authority"), *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985); *but see Minton v. Lowe's Food Stores*, 121 N.C. App. 675, 680-81, 468 S.E.2d 513, 516 (allowing the trial court to assess bond premiums as costs), *disc. review denied*, 344 N.C. 438, 476 S.E.2d 119 (1996).[1]

---

1. *Minton* relied on *Alsup* in allowing the trial court to assess bond premiums as costs; *Alsup*, however, merely reaffirms the trial court's authority to assess deposition costs, and does not provide a basis for enlarging the definition of assessable costs.

In this case, the trial court ordered Defendant to pay Sara Lee $394.50 for "fees assessed by Community Bank to assemble records and appear and testify pursuant to subpoena." This is not an assessable cost enumerated under section 7A-305, and is not otherwise an assessable cost "as provided by law." It follows that the trial court lacked the authority to assess this expense as a cost. The trial court must therefore modify its award of costs on remand to exclude this expense.

B

**[7]** Section 7A-305 specifically includes as assessable costs the fees of "guardians ad litem, referees, receivers, commissioners, surveyors, arbitrators, appraisers, *and other similar court appointees*, as provided by law." N.C.G.S. § 7A-305(d)(7) (1995) (emphasis added). In construing "other similar court appointees," we are restricted by the "kind, character and nature" of the specifically enumerated court appointees in the statute. *State v. Lee*, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970) (noting that the doctrine of *ejusdem generis* restricts the meaning of general words following a specific listing to things of the same kind, character and nature). An "arbitrator," one of the specifically enumerated court appointees in section 7A-305, is a "person chosen to settle the issue between parties engaged in a dispute." *American Heritage College Dictionary* 69 (3d ed. 1993). Similarly, a "mediator" is one who "bring[s] about . . . a settlement . . . by working with conflicting parties." *See id.* at 845 (defining "mediate"). Thus a mediator is of the same kind, character, and nature as an arbitrator. Furthermore, North Carolina's "Rules Implementing Statewide Mediated Settlement Conferences in Superior Court Civil Actions" provide that, "[u]nless otherwise agreed to by the parties *or ordered by the court*, the mediator's fee shall be paid in equal shares by the parties." N.C.R. Implementing Statewide Mediated Settlement Conferences in Super. Ct. Civ. Actions 7D (emphasis added). This language impliedly gives trial courts the authority to order an unequal division of mediator fees. *See Board of Education v. Dickson*, 235 N.C. 359, 361, 70 S.E.2d 14, 17 (1952) (noting that matters which are necessarily implied by statutory language are to be given effect to the same extent as matters specifically expressed). We therefore construe "other similar court appointees" in section 7A-305 to include court-appointed mediators.

In this case, mediation was conducted pursuant to court order, and the trial court ordered Defendant to pay $250.00 for Sara Lee's

portion of the mediator's fee. Mediator's fees are an assessable cost, and no abuse of the trial court's discretion has been shown in awarding this cost to Sara Lee.

Affirmed in part, vacated in part, and remanded.

Judges WALKER and TIMMONS-GOODSON concur.